JACK KELLER,                          )
JORDAN S. KELLER,                     )
                                      )
        Plaintiffs/Appellants,        )
                                      )   Appeal No.
                                      )   01-A-01-9505-CV-00212
VS.                                   )
                                      )   Davidson Circuit
                                      )   No. 94C-2054
COLGEMS - EMI MUSIC, INC.,            )
SCREEN GEMS - EMI MUSIC, INC.,        )
EMI MUSIC PUBLISHING, INC.,           )
                                      )
        Defendants/Appellees.         )

FILED

Jan. 5, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE WALTER C. KURTZ, JUDGE




JACK KELLER
JORDAN S. KELLER
8282 Collins road
Nashville, Tennessee  37221
        Pro Se Plaintiffs/Appellants

ROBERT L. SULLIVAN
MANATT, PHELPS & PHILLIPS
1233 17th AvenueSouth
Nashville, Tennessee  37212
        Attorney for Defendants/Appellees




AFFIRMED AND REMANDED




                              BEN H. CANTRELL, JUDGE


CONCUR:
TODD, P.J., M.S.
LEWIS, J.

# O P I N I O N

On June 28, 1994, Plaintiff Jack Keller sued the defendants in the Davidson County Circuit Court claiming a breach of fiduciary duty by fraudulently failing to disclose the contents of a contract amendment signed in 1960. Jordan Keller, to whom a part of the contract rights had been assigned, joined his father as plaintiff.

The breach of duty allegedly was discovered in 1988 and the question in this case is whether the three year statute of limitations or the six year statute applies. We hold that the three year statute applies, and therefore affirm the trial court's action in dismissing the complaint.

## Facts

Plaintiff Jack Keller, a professional songwriter, signed an employment agreement with Aldon Music, Inc. on November 5, 1959, to perform various services as a songwriter, producer, and performer. The contract contained a provision, an "Exhibit B" which obligated Aldon "to counsel [Jack Keller] as to contracts for his professional work . . . to make the professional career of [Keller] the success contemplated, both professionally and financially, and in general . . . endeavor to the best of [Aldon's] ability to forward the interests of [Keller]. The contract also contained an "Exhibit A" which was crossed out by the parties. Exhibit A would have allowed Aldon:

> "To secure copyright registration and protection of said works at your own cost and expense and at your election, including any and all renewals of copyright to which I may hereafter become entitled, and to have and to hold said copyrights and all rights of whatsoever nature thereunder existing, for and during the full terms of all said copyrights and all renewals and extensions thereof. It is hereby agreed that one-half of the general advance royalty

payable to me under paragraph 4(k) of this agreement is in consideration of the grant by me of said renewals of copyright and the rights existing thereunder."

In 1960, (the amendment is not dated, and the exact date is nowhere to be found in the record) Plaintiff Jack Keller signed an amendment to the 1959 agreement effectively reinstating the provisions contained in Exhibit A. Keller claims that Aldon co-owner Don Kirshner told him the only effect of the amendment would be to enable Keller to produce other artists for an increased royalty rate. Mr. Keller also claims he signed the amendment only after relying on the misstatements of his personal manager Aldon Music.

Mr. Keller allegedly first discovered the amendment's provision governing copyright renewal rights on July 13, 1988, which he maintains is "when the first composition copyrighted under the 1959 agreement between himself and Aldon became subject to renewal." At that time EMI Music Publishing, Inc., ("EMI") which had subsequently acquired Aldon Music, informed Mr. Keller that he did not have the right to renew his copyrights.

## Issues

The principal issue before this Court is the appropriate statute of limitations applicable to this action, more specifically whether the three year statute of limitation for injuries to personal property found in Tenn. Code Ann. § 28-3-105 applies to bar appellants' claims as the appellees insist, or whether the six year statute found in Tenn. Code Ann. § 28-3-109(c) is more appropriate. Tenn. Code. Ann. § 28-3-105 states:

Property tort actions - Statutory liabilities. -- The following actions shall be commenced within three (3) years from the accruing of the cause of action:

(1) Actions for injuries to personal or real property;

\* \* \*

Tenn. Code Ann. §28-3-109(c) reads in relevant part:

(a) The following actions shall be commenced within six (6) years after the cause of action accrued:

(3) Actions on contracts not otherwise expressly provided for.

\* \* \*

In Tennessee the applicable statute of limitations is determined according to the gravamen of the complaint rather than its designation as an action for tort or contract. *Pera v. Kroger,* 674 S.W.2d 715, 719 (Tenn. 1984). In determining the gravamen, or real purpose of an action, the court must look to the basis for which damages are sought. *Bland v. Smith,* 197 Tenn. 683, 277 S.W.2d 377 (1955). Another way of stating this principle is "[t]he limitation is not determined by the form of the action but by its object." *Bodne v. Austin*, 156 Tenn. 156, 2 S.W.2d 100 (1928), *quoting Birmingham v. Chesapeake & Ohio Railway Co.,* 37 S.E. 17 (Va. 1900).

Thus, regardless of whether a complaint sounds in contract, if the suit seeks to recover damages for injuries to the plaintiff's property, the applicable limitations period is three years as found in Tenn. Code Ann. § 28-3-105. *Alexander v. Third National Bank*, 1994 W.L. 424287, \*3 (Tenn. App. 1994). An "injury to property" need not be physical however, just as an injury to the person is not limited to bodily injury. *Id.* Also, actions for damages resulting from the breach of contract to a builder of real property are considered actions for damages to property even where they have sued in contract. *Id.*

The Second Amended Complaint alleges fraud, and breach of fiduciary duty with regard to the 1960 amendment. The appellants insist that they have been

deprived of the right to recapture 100% of their copyrights after the first 28 year copyright period.  They contend that they, and not Aldon Music, would have been the owners of the renewal rights in the copyrights before the amendment was signed.  Whether the loss of these renewal rights is actionable as an injury to "personal property" under the tort statute of limitations, or more appropriately as economic damage to one's "pocketbook"  is the foremost issue in this appeal.

In *Vance v. Schulder* the owner of 10% of the stock of a corporation filed suit alleging that one of the defendant directors had fraudulently represented that there had been an offer to purchase the corporation for $360,000, but that the offer had been for $708,000 and that the plaintiff had been induced to sell his interest for $36,000 and suffered damage in the amount of $34,800 because of this fiduciary breach.  547 S.W.2d 927 (Tenn. 1977).  In applying the three year statute of limitations, the Supreme Court stated that it was "important to distinguish this transaction from the more typical situation where corporate directors or officers with inside information purchase or sell stock detrimentally to stockholders at large."  *Id.* at 931.  Those more typical fiduciary breaches the Court reasoned, are "quasi-contractual in nature" and thus the six year statute would be applicable.  *Id.*

As in this case, the plaintiff in *Vance* alleged damages resulting from breach of a fiduciary duty caused by a face to face misrepresentation which induced a financial loss.  In *Vance* the property rights were in shares of stock, in this instant case, copyright renewals.  The Court in *Vance* determined that the gravamen of the action was tortious, specifically fraud in the inducement of a contract.  *Id.*  As the appellants do in this case, the plaintiff in *Vance* argued that the monetary, non-physical loss suffered cannot be an " 'injury to property' in the classic tort sense of the word."  *Id.* at 932.  As the Court stated however, "[t]his argument is predicated upon a narrow definition of the word 'injury' as used in the property actions three year

statute, and the notion that torts, in the classic sense, result only in physical damage."
*Id.*

The Court concluded that the economic loss sustained by the plaintiff from the fraud was an " 'injury to personal property' " as stated in Tenn. Code Ann. § 28-305, the predecessor to today's Tenn Code Ann. § 28-3-105. Although the Court conceded the question was a close one, it applied the three year statute.

In 1980 the Court of Appeals decided a case which dealt with the interplay between the three and six year statutes of limitations in Tennessee. In *Harvest Corporation v. Ernst & Whinney*, the plaintiff claimed that the defendant partnership failed to audit the inventory of a company professionally, causing the plaintiff to pay an excessive price for the corporate stock of such company. 610 S.W.2d 727 (Tenn. App. 1980). The Court held that such action was for ordinary money damages resulting from breach of contract, and thus, the applicable statute of limitations was the six year statute for contract cases rather than the three-year statute for actions involving injury to real or personal property. The Court noted that although the gravamen of the complaint was that the defendants overstated the value of the corporation in question, the "general tenor" of the complaint was that the defendants attempted to perform the contract in an unprofessional manner and more importantly, the property being audited *was not the plaintiffs at the time of breach.* 610 S.W.2d at 731.

The Court in *Harvest Corporation,* quoted the following from *Bland v. Smith*, a 1955 Tennessee Supreme Court case:

> "It will be found that the weight of authority to be (sic) in Tennessee and elsewhere that regardless of whether the suit is based on tort or on contract the Court must look to the plaintiff's declaration to see whether or not he is suing for damages arising out of a contract or for damages

arising out of tort. . . . "  277 S.W.2d 377, 380 (Tenn. 1955).  *Id.* at 729.

From this precedent the *Harvest Corporation* Court then observed that the major criterion in determining the gravamen of the action is the kind of damage alleged. *Id.* at 729.  The inquiry into the kind of damage alleged "is utilized regardless of whether the cause of action sounds in tort or contract." *Prescott v. Adams,* 627 S.W.2d 134, 137 (Tenn. App. 1981).  The *Harvest Corporation* Court then examined two different types of lawsuits to demonstrate the principle enunciated in *Bland v. Smith.*  First, the Court viewed medical malpractice cases and noted that "although the claim may arise in contract by virtue of the doctor-patient relationship, the damages sustained are to the person . . . and are governed by the one year statute of limitations and not the general contract statute of limitations." *Harvest Corp.* at 729. Second, the Court examined legal malpractice cases which it concluded are "neither to the person nor property of the claimant but are to the client's "pocketbook." *Id.*  The Court based this statement of law on a 1966 Supreme Court legal malpractice action, where an attorney failed to file suit before the running of the statute of limitations.  The Supreme Court characterized the suit as one based on the "failure to carry out contractual duties and not against one for doing some wrong to the person." *Hillhouse v. McDowell,* 219 Tenn. 362, 410 S.W.2d 162, 163 (1966).  The Kellers argue that their damages are analogous to purely economic or "pocketbook" damages found in legal malpractice cases.

Later in its opinion the *Harvest Corporation* Court stated:

> ". . . suits for fraud, deceit, or conspiracy, whether they arise incident to a contract or not are actions in tort and must be governed by the applicable tort statute of limitations.  At bar, neither fraud, deceit nor conspiracy are charged and no facts which could possibly constitute such have been pled.

With the foregoing general principles in mind, we examine the pleadings in this case in order to determine the nature of plaintiff's cause of action look to the damages alleged." *Id.* at 730, 731.

The Court eventually determined that the damages sought by the plaintiff were the "ordinary money damages that result from a breach of contract." *Id.* at 730. The Court stated that the complaint essentially stated that the defendants did not advise the plaintiffs of the inventory's true value as required by the contract, and that result led directly to the damages alleged.

## Conclusion

In Tennessee we determine the gravamen of the complaint by looking to the basis for which damages are sought. *Bland v. Smith, 197 Tenn. 683,* 277 S.W.2d 377 (1955). The basis of the appellants' damages are tortious in nature, specifically breach of fiduciary duty, and fraudulent misrepresentation. The *Harvest Corporation* Court instructs us to look at the act which created the damages to determine the statute of limitation regardless of whether a contract existed between the parties. In *Vance v. Schulder,* the Supreme Court concluded that the phrase "injury to property" in the three year statute of limitations was not to be narrowly confined to tangible property damaged in a physical manner only. Taking the view of personal property suggested by the *Vance* decision we believe the renewal rights must be considered "property." Therefore, the three year statute of limitations governs this suit.

We conclude that an economic loss, as in the case before us, which is a consequence of property damage is within the three year statute found in Tenn. Code Ann. § 28-3-105. Thus the decision of the trial court is affirmed. Costs on appeal are taxed to the appellants and the case is remanded for any proceedings consistent with this opinion.

_____
BEN H. CANTRELL, JUDGE


CONCUR:

- 9 -


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE