**KINGVISION PAY PER VIEW, LTD.,**
a Delaware Corporation, Plaintiff,

v.

**David M. WILSON, Defendant.**

No. 99–2382–V.

United States District Court,
W.D. Tennessee,
Western Division.

Jan. 12, 2000.

John O. Threadgill, Threadgill & Associates PC, Knoxville, TN, for Kingvision Pay Per View, Ltd., plaintiff.

William D. Wilson, Jr., Law Offices of William D. Wilson, Jr., Memphis, TN, for David M. Wilson, defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

VESCOVO, United States Magistrate Judge.

Plaintiff Kingvision Pay Per View, Ltd. sued defendant David M. Wilson, the owner of Shelby's Bar and Grill, for unauthorized interception and display of a broadcast of a series of boxing matches in violation of sections 553 and 605 of the Cable Communications Policy Act of 1984, 42 U.S.C. § 521 *et seq.* Defendant now moves the court for summary judgment on the grounds that the plaintiff's lawsuit is time barred by the statute of limitations.[1] For the reasons that follow, defendant's motion is denied.[2]

The facts underlying the present dispute are set forth with particularity in this court's order of December 7, 1999. In sum, plaintiff alleges that it owned the rights to broadcast a series of boxing matches on June 28, 1997, including the Holyfield–Tyson fight. In addition to charging home viewers a fee (known as "pay-per-view"), plaintiff entered sublicensing agreements with various commercial establishments and other venues to permit those establishments to display the fights to the public. The defendant, the owner of a bar and grill in Memphis, did not have a sublicensing agreement with plaintiff to display the fights at his restaurant. Plaintiff avers that an investigator it hired observed the matches being shown on televisions in defendant's restaurant on June 28, 1997. Defendant denies that the fights were shown in his establishment that evening.

The remaining critical facts for purposes of the present summary judgment motion are uncontroverted. The interception is alleged to have occurred on June 28, 1997. Suit was not commenced until May 3, 1999, nearly two years later. Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 553(a). (*See* Pl.'s Resp. to Def.'s Mot. for Summ.J. at 1, n. 1.)

An set forth in this court's previous order, the standard for evaluating whether to grant a motion for summary judgment is clearly defined. A motion for summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir.1993); *see also Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs.,* 979 F.2d 1131, 1133 (6th Cir.1992) (per curiam). There are no disputed facts concerning the present summary judgment motion; there is only a question of law.

---

**1.** On November 23, 1999, plaintiff filed a motion for summary judgment which was denied in an order dated December 7, 1999.

**2.** The parties have consented to the trial of this matter before the United States Magistrate Judge.

**916**

The sole legal issue is what statute of limitations applies to federal causes of action under sections 553 and 605, neither of which include an explicit limitations period.[3] Defendant insists that where Congress has failed to provide a statute of limitations federal courts must look to analogous state statutes. Since the federal statutes under which plaintiff brings this action do not contain express statutes of limitations, defendant urges this court to adopt Tennessee's one-year statute of limitations applicable to actions for statutory penalties, *see* T.C.A. § 28–3–104(a)(4).

In response,[4] plaintiff urges this court to adopt a statute of limitations from an analogous federal statute that would apply to all cases brought under the Cable Act and provide uniformity in the application of the Act. Plaintiff contends that the most appropriate federal statute is the Copyright Act, 17 U.S.C. § 507. It provides that plaintiff may bring suit within three years of the accrual of the cause of action. In the alternative, plaintiff makes a one-paragraph argument that if the court adopts a state statute of limitations, it should adopt Tennessee's three-year statute of limitations set forth in T.C.A. § 28–3–105 for conversion.

■ Determination of the appropriate statute of limitations to apply requires a two-stage analysis. First, the court must decide whether to borrow the statute of limitations from a federal or a state source. Once the court has determined whether federal or state limitations should apply, the court must decide which particular limitations period to adopt for the case sub judice.

■ It is well-established that federal courts should defer to state statutes of limitations where Congress has failed to provide an explicit limitation period. *See North Star Steel Co. v. Thomas,* 515 U.S. 29, 33–34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995) (noting that "our practice has left no doubt" that a state statute of limitations is "the lender of first resort"). As the Supreme Court has pointed out, the practice of federal courts borrowing state limitations provisions "is not only 'longstanding,' ... but 'settled'...." *North Star,* 515 U.S. at 34, 115 S.Ct. 1927. (quoting *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 147, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) and *Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). A litany of lower courts has reiterated the rule that state statutes of limitations should generally apply where Congress has remained silent on the issue.[5] *See, e.g., Everett v. Cobb Coun-*

---

**3.** 47 U.S.C. § 553 was enacted in Section 634 of the Cable Communications Policy Act of 1984, Pub.L. No. 98–549, 98 Stat. 2779 (codified as amended in scattered sections of 47 U.S.C.) ("the Act"). 47 U.S.C. § 605 was originally enacted in Section 705 of the Communications Act of 1934, but civil causes of action did not exist under that section until passage of the Act in 1984.

**4.** Plaintiff, by and through its attorney John O. Threadgill, filed a pleading in response to defendant's motion for summary judgment. Its responsive pleading totaled nineteen paragraphs. Approximately seven of the paragraphs were copied in whole or part directly from 19 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 4519 (2d ed.1996) without citation. Additionally, three of the seven footnotes were copied verbatim from the text of Wright and Miller without citation. Nowhere in the responsive pleading was any credit

given to Wright and Miller, which is copyrighted by West Publishing Company. The court does not condone this practice and finds this practice even more distasteful in a case, such as the present, that is predicated on alleged theft of intellectual property. Indeed, this practice may violate DR 1–102 of Tennessee's Code of Professional Responsibility which prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation." *See In re Lamberis,* 93 Ill.2d 222, 66 Ill.Dec. 623, 443 N.E.2d 549 (1982) (holding that plagiarism by an attorney in a masters of law thesis violated Illinois Code of Professional Responsibility DR 1–102(a)(4)). *See also In re Hinden,* 654 A.2d 864 (D.C.App.1995) and *In re Steinberg,* 206 A.D.2d 232, 620 N.Y.S.2d 345 (1994).

**5.** In 1990, Congress made an attempt to bring some uniformity to statutes of limitation in federal causes of action with the enactment of

*ty Sch. Dist.,* 138 F.3d 1407, 1409 (11th Cir.1998) (applying state limitations period to action brought under the Americans with Disabilities Act and the Rehabilitation Act of 1973); *Southerland v. Hardaway Management Co., Inc.,* 41 F.3d 250 (6th Cir.1994) (same); *Anderson v. Hardman,* No. 99 C 7282, 1999 WL 1270692, at *2 (N.D.Ill.Dec.17, 1999) (noting that "[section] 42 U.S.C.1988 requires federal courts to borrow and apply a state's personal injury statute of limitations to all Section 1983 claims") (citing *Wilson,* 471 U.S. at 261, 105 S.Ct. 1938); *Manning v. Utilities Mutual Ins. Co.,* No. 98 Civ. 4790(RCC), 1999 WL 782569, at *1 (S.D.N.Y. Sept.30, 1999) (holding that because the Medicare Secondary Payer Act, § 42 U.S.C. 1395y(b), contained no express statute of limitations, "the Court must borrow a state statute of limitations...."); *Kusek v. Family Circle, Inc.,* 894 F.Supp. 522, 530 (D.Mass.1995) (holding that state statute of limitations applies to alleged trademark infringement claims brought under the Lanham Act, 15 U.S.C. § 1125(a)).

Congress has come to rely on this long-standing practice of the federal courts. Recognizing this fact, the Supreme Court noted that "given our longstanding practice of borrowing state law, and the congressional awareness of this practice, we can generally assume that Congress intends by its silence that we borrow state law." *Agency Holding Corp.,* 483 U.S. at 147, 107 S.Ct. 2759. Being well aware of the practices of the federal courts to adopt a state statute of limitations, Congress can easily include an explicit statute of limitations in a particular federal law to ensure national uniformity. Congress did not do so in either of the two statutes at issue here.

■ Despite the long-standing preference for state statutes of limitations, plaintiff insists that this court should adopt a federal statute of limitations in this case. Noting that the Supreme Court has authorized the adoption of federal statutes of limitations in some circumstances, plaintiff argues that "in an increasing number of contexts, federal courts have found that related provisions of federal law provide the best sources for borrowing statutes of limitations." (Pl.'s Resp. to Def.'s Mot. for Summ.J. ¶ 10.) While this statement is perhaps literally true, it is somewhat misleading. Borrowing from federal law is a "closely circumscribed ... [and] narrow exception to the general rule." *North Star,* 515 U.S. at 34, 115 S.Ct. 1927. In fact, the Supreme Court has severely limited the circumstances under which courts should borrow federal rather than state statutes of limitation. It is only when a state statute of limitations would curtail the implementation of federal law or frustrate the policies underlying the law that a court should ignore the state limitation and adopt a federal limitation. *North Star,* 515 U.S. at 34, 115 S.Ct. 1927 (internal citations omitted).

■ The crux of plaintiff's argument is that borrowing state statutes of limitations would frustrate the policies underlying the Cable Communications Policy Act by subjecting plaintiffs to "the vagaries of potentially fifty (50) different limitations periods." (Pl.'s Resp. to Def.'s Mot. for Summ.J. ¶ 15.)[6] According to plaintiff,

a four-year federal statute of limitations as part of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5114 (codified as amended at 28 U.S.C. § 1658). That limitations period is not applicable in the present case, however, because it applies only to civil actions that arise under Congressional Acts passed after the adoption of the Judicial Improvements Act in 1990. *Id.* Both of the statutes that defendant is alleged to have violated in this case were enacted years before the Judicial Improvements Act.

6. The court notes that plaintiff in the present case appears to have had little trouble filing lawsuits in a variety of fora around the nation. In the last five years, plaintiff has filed at least sixteen lawsuits in federal court regarding allegations similar to those in the present case. Search of Westlaw, ALLFEDS Database (Jan. 10, 2000).

the "multi-state geographic nature" of cable broadcasts indicates that a uniform standard is preferable. (*Id.*) Plaintiff further argues that the Cable Act would be rendered meaningless if different statutes of limitation applied in different states, and that Congress certainly would not have intended such an outcome.

To determine whether the adoption of state limitations periods would frustrate the policies underlying the Cable Act, the court must first consider what those policies are. *Wilson,* 471 U.S. at 269–71, 105 S.Ct. 1938. Both section 553 and section 605 have similar underlying purposes. One of the primary purposes behind the enactment of these sections was to discourage the theft of cable services. As the House Report accompanying the Act noted,

> The committee is extremely concerned with a problem which is increasingly plaguing the cable industry—the theft of cable service. This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire in a building's hallway that is used for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants. Such practices not only often permit one to obtain cable service without paying the installation and hook-up costs, but also, for instance, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services.

H.R.Rep. No. 98–934, at 84 (1984), reprinted in 1984 U.S.C.C.A.N. 4655, 4720. Additionally, Congress intended to provide "penalties and remedies" that would be available in all courts to prosecute claims against defendants who stole cable service. *Id.* at 4721. However, Congress did not intend to establish the national standard that plaintiff urges. The legislative histo-

ry of the Act indicates that Congress was aware of varying state approaches to cable theft problems and decided to leave the state standards in place:

> The Committee recognizes that a number of states have enacted statutes which provide criminal penalties and civil remedies for the theft of cable service, and the Committee applauds those efforts. Subsection (d) provides that *laws enacted by a State ... dealing with this problem are not affected by this section,* even if such laws impose higher penalties or sanctions than those set forth in this section. The Committee believes that this problem is of such severity that the Federal penalties and remedies contained herein must be available in all jurisdictions (and *enforceable in state or Federal court*) as *part of the arsenal necessary* to combat this threat.

*Id.* at 4721 (emphasis added).

Three portions of the above paragraph are significant in discerning Congress's intent in passing the Act. First, it is important to note that Congress refused to set a national standard for the problem of cable theft by preempting state laws that addressed the issue of cable theft. Subsection (d) (now 47 U.S.C. § 605(e)(6) and (f)) permits states to pass laws to address cable theft without running afoul of federal law. It is unlikely that a Congress that desired a national standard would leave state standards so utterly unaffected. Second, Congress did not place the problem of cable theft under the exclusive jurisdiction of federal courts, a step that would certainly have indicated a desire for uniformity. Instead, Congress decided that this statute should be enforceable in state or federal courts. It is doubtful that any more "vagaries" would result from the application of state statutes of limitations in cases arising under the Act than would result from having the courts of fifty-one different sovereigns hear cases under the Act. Finally, Congress indicated that the Act was designed to supplement, rather than supplant, other laws when it men-

tioned the remedies under the Act as being "part of the arsenal" available to prosecutors and plaintiffs. Again, Congress could have placed the entire issue of cable theft in federal hands, but decided to maintain some level of state control.

It may be true from a purely theoretical perspective that a national standard for application of the Act would be preferable to the adoption of state limitations. However, it is also true that Congress was aware when it passed the Act without an explicit statute of limitations that it was condoning the use of state limitations periods. If, in fact, Congress wanted a national standard, it would have indicated that in the statute itself. *See, e.g., Joe Hand Promotions, Inc. v. Lott,* 971 F.Supp. 1058, 1063–64 (E.D.La.1997) (observing that "if Congress intended to provide for a uniform limitations period [for 47 U.S.C. § 605], it could have explicitly set such a period when it passed the original act or in any of the four subsequent times it has amended section 605."). The mere fact that cable programming is broadcast in many states is not a compelling reason to ignore the Congressional intent to have federal courts apply state limitations periods in civil actions arising under 47 U.S.C. §§ 553 and 605. Thus, state statutes of limitations apply to cases arising under the Act.

Having determined that state limitations should apply, the next step is to determine which limitations period the court should borrow from Tennessee's many statutes of limitations. Defendant urges the court to adopt a one-year statute of limitations that applies to actions for statutory penalties, *see* T.C.A. § 28–3–104(a)(4), while plaintiff claims that T.C.A. § 28–3–105, the three-year limitations period for conversion, is more appropriate.[7]

The determination of which limitations period to apply turns on which state cause of action is "most analogous to the federal cause of action." *Janzen v. Knox County Bd. of Educ.,* 790 F.2d 484, 486 (6th Cir.1986). Tennessee courts determine the applicable statute of limitations based on "the gravamen of the complaint rather than its designation," and courts must "look to the basis for which damages are sought." *Keller v. Colgems–EMI Music, Inc.,* 924 S.W.2d 357, 359 (Tenn.Ct. App.1996).

In the present case, plaintiff alleges that defendant stole its broadcast of a series of boxing matches and used it for his own benefit. Under Tennessee law, conversion is "the appropriation of [property] to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *Mammoth Cave Prod. Credit Ass'n v. Oldham,* 569 S.W.2d 833, 836 (Tenn.Ct.App.1977) *(quoting Barger v. Webb,* 216 Tenn. 275, 391 S.W.2d 664, 665 (1965)). A conversion occurs when a defendant wrongfully takes plaintiff's property and uses it for his own benefit. Plaintiff's claim set forth in its complaint is, by its nature, analogous to a claim for conversion, and thus the three-year statute of limitations in T.C.A. § 28–3–105 should apply.

The analogy between violations of the Cable Act and conversion has been drawn by other district courts in cases identical to the one before the court. In *Joe Hand Promotions, Inc. v. Lott,* 971 F.Supp. 1058 (E.D.La.1997), plaintiff alleged that the defendant had illicitly televised a boxing match which plaintiff had the rights to distribute through closed circuit television. Plaintiff urged that Louisiana's residual ten-year statute of limitations should apply to the action. However, the court held that "plaintiff's section 605 claim is analo-

---

**7.** T.C.A. § 28–3–104 provides that "Actions for statutory penalties ... shall be commenced within one (1) year after the cause of action accrued...." T.C.A. § 28–3–105 provides that "actions for injuries to personal or real property" and "actions for the detention or conversion of personal property ... shall be commenced within three (3) years from the accruing of the cause of action...."

gous to the state law tort of conversion," and therefore Louisiana's one-year statute of limitations applied to bar the action. *Id.* at 1063. Similarly, in a case involving this very plaintiff, *Kingvision Pay Per View, Ltd. v. Bowers,* 36 F.Supp.2d 915 (D.Kan. 1998), the court examined whether plaintiff's claim that defendant violated the Act in illicitly broadcasting two boxing matches was analogous to conversion or to a state statute of limitations for an "action upon statutory penalty." *Id.* at 918. The court held the claims of violation of the Cable Act to be more analogous to conversion than to an action upon a statutory penalty and applied Kansas' two-year statute of limitations for conversion.

In the alternative, plaintiff's claim can be characterized as a claim for injury to property which is also subject to the three-year statute of limitations. *See Keller,* 924 S.W.2d at 359 (citations omitted) (noting that if a suit "seeks to recover damages for injuries to the plaintiff's property, the applicable limitations period is three years as found in [T.C.A.] § 28–3–105"). "An 'injury to property' need not be physical...." *Id.* In *Keller,* plaintiff alleged that defendant had breached a fiduciary duty by fraudulently failing to disclose the contents of a contract amendment which he had signed. The amendment gave defendant the right to hold and renew plaintiff's copyrights in certain works. *Id.* at 358–59. The court held that the nature of the claim was not contractual, but was rather a claim for damage to plaintiff's right to renew his own copyrights. As a result, this was "an economic loss ... which is a consequence of property damage...." *Id.* at 361. As a result, the court applied the three-year statute of limitations from T.C.A. § 28–3–105.

As either a suit in conversion or an action for damages to personal property, the three-year statute of limitations from T.C.A. § 28–3–105 applies. Because the suit was filed within three years of the date that the cause of action accrued, it is not time-barred. For the foregoing rea-

sons, defendant's motion for summary judgment is denied.

IT IS SO ORDERED.