**Juanita SWETT**

v.

**Joe BINKLEY, Jr.**

Court of Appeals of Tennessee,
at Nashville.

Assigned on Briefs Sept. 3, 2002.

Nov. 20, 2002.

Application for Permission to Appeal
Denied by Supreme Court
March 17, 2003.

Charles Galbreath, Nashville, Tennessee, for appellant, Juanita Swett.

Joe Binkley, Jr., Nashville, Tennessee, pro se.

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and J.S. DANIEL, Sp.J., joined.

## OPINION

A divorce client sued her attorney on an alleged promise to reimburse all prepaid fees and expenses at the conclusion of the

divorce proceeding. The trial judge held that the claim was barred by the one-year statute of limitations in Tenn.Code Ann. § 28-3-104(a)(2), and granted the attorney summary judgment. On appeal the client asserts (1) that the six-year contract statute of limitations applies, and (2) in any event, the action was commenced within a year of the accrual of the cause of action. We affirm the trial court.

## I.

In 1987, Juanita Swett retained attorney Joe Binkley, Jr. to represent her in a divorce action. Ms. Swett alleges that Mr. Binkley assured her that the court would order her husband to pay all attorney's fees and expenses and that she would be reimbursed for any fees and expenses she paid during the pendency of the action. Mr. Binkley disputes this version of the agreement, but for the purpose of deciding if summary judgment was proper we will assume that her version is accurate. *Dooley v. Everett*, 805 S.W.2d 380 (Tenn.Ct. App.1990).

In the final decree of divorce, entered on February 20, 1992, the court ordered Ms. Swett's husband to pay Mr. Binkley $45,014.26 in fees and costs. Mr. Swett appealed, and this court affirmed the trial court's disposition of the issues involved in the divorce. On remand the trial court awarded Mr. Binkley an additional $10,220.00 for his services on appeal.

Mr. Swett did not pay Mr. Binkley. In 1995, Ms. Swett engaged Mr. Binkley to file a contempt petition charging Mr. Swett with the failure to maintain a $100,000 life insurance policy with Ms. Swett as the beneficiary. Mr. Swett died on April 14, 1995 and the action proceeded against his estate to secure the policy proceeds for Ms. Swett. Again, Ms. Swett alleges that Mr. Binkley agreed to look to the estate for his fees and costs, and agreed that Ms. Swett would be reimbursed for any costs and fees that she paid in the interim.

The insurance company that insured Mr. Swett's life filed an interpleader action to determine the proper person(s) to receive the proceeds of the policy. Mr. Binkley represented Ms. Swett in the interpleader action and recovered the full amount of the policy plus interest. On August 30, 1996, Ms. Swett signed a settlement statement awarding Mr. Binkley $11,080.00 in attorney's fees and $121.71 in expenses for the interpleader action. The statement also reflected a payment to Mr. Binkley of $9,533.21 as reimbursement for expenses he advanced in the divorce case. He agreed to repay Ms. Swett the expense money from the divorce case if he could collect the expenses from Mr. Swett's estate. Mr. Binkley continued to press his own claims and those of Ms. Swett against Mr. Swett's estate.

The record reflects that David Swett (whose relationship to the estate does not appear), agreed to pay 76.3% of each claim. Mr. Binkley wrote to Ms. Swett on July 3, 1997 outlining the settlement. On July 9, 1997, Ms. Swett executed the following acknowledgment:

> I, Juanita J. Swett have read the correspondence of my attorney Joe P. Binkley, Jr. dated July 3, 1997 and I fully understand the content of this correspondence. It is my intention to settle my claim against the estate of Morris Clark Swett for .763% of the full amount. I have agreed to accept the sum of $5,145.37 in full satisfaction of my claim against the estate of Morris Clark Swett. It is further my understanding that my attorney Joe P. Binkley, Jr. has also agreed to accept .763% of his claim against the estate of Morris Clark Swett and that Mr. Binkley will be receiving $64,855 in full satisfaction of

his claim against the estate of Morris Clark Swett.

/S/ *Juanita J. Swett*

/S/ *7–9–97*

Ms. Swett filed this action on June 22, 1999 claiming that Mr. Binkley had failed to honor his promise to refund to her all the fees and expenses she had advanced in the litigation.

## II.

The trial court granted summary judgment to the defendant on the ground that Ms. Swett's claims were governed by the one-year statute of limitations for legal malpractice found in Tenn.Code Ann. § 28–3–104 and that the statute began to run on either August 30, 1996 or on July 9, 1997. Thus an action filed on June 22, 1999 would clearly be untimely.

### A. THE GOVERNING STATUTE

■ On appeal, Ms. Swett argues that her claim is not one of legal malpractice but of a breach of contract, and that it is governed by the six-year statute of limitations in Tenn.Code Ann. § 28–3–109.

We disagree. Tenn.Code Ann. § 28–3–104(a)(2) governs "actions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort." We think it is instructive to note that this section of the statute was passed by the legislature on May 17, 1967 in the first session after the Supreme Court's December 1966 decision in *Hillhouse v. McDowell,* 219 Tenn. 362, 410 S.W.2d 162 (1966). In that case, the court held that an action for malpractice for failing to timely file an action for personal injuries was a breach of contract and was governed by what is now Tenn.Code Ann. § 28–3–109. The court distinguished its earlier decision in *Bland v. Smith,* 197 Tenn. 683, 277 S.W.2d 377

(1955), in which it applied the one-year statute to a legal malpractice action because, as the court read the declaration, it alleged a tort for personal injuries. We think the legislature sought to remove any doubt about which statute applied to a malpractice claim, and it chose the one-year period of limitations.

■ In addition, the courts are admonished to determine the appropriate statute of limitations "according to the gravamen of the complaint," *Keller v. Colgems–EMI Music, Inc.,* 924 S.W.2d 357 (Tenn.Ct.App. 1996); and it seems to us that the gravamen of Ms. Swett's complaint is not Mr. Binkley's breach of a promise. Instead, it is a complaint that he failed to recover all the fees and expenses from Mr. Swett or his estate. That complaint clearly comes within the legal malpractice statute of limitations contained in Tenn.Code Ann. § 28–3–104(a)(2).

### B. ACCRUAL OF THE CAUSE OF ACTION

■ We are of the opinion that the trial judge correctly concluded that the cause of action accrued at the latest on June 9, 1997. When Ms. Swett signed the settlement statement on that date, she knew or should have known that she was not going to get any further payments out of the settlement with Mr. Swett's estate. That realization contained two elements: (1) knowledge that Mr. Binkley had not recovered all he allegedly said he would from Mr. Swett's estate; and (2) knowledge that she had been harmed by his alleged failure. By all the authorities in this state that much information starts the running of the statute of limitations. *See Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn.1995) and the cases cited therein.

■ Ms. Swett alleges, as a last defense, that Mr. Binkley made a payment to her on June 24, 1998, and that payment

started the statute running again. Mr. Binkley acknowledges that he made the payment, but he says he did it in order to put an end to Ms. Swett's incessant complaints.

█ Ms. Swett does not cite any authority for her position. She only argues that the payment is evidence of her uncertainty as to whether she had been harmed. *See Cherry v. Williams,* 36 S.W.3d 78 (Tenn. Ct.App.2000). We recognize, however, that a defendant may revive a plaintiff's remedy that has been barred by the statute of limitations either by expressly promising to pay the debt or by acknowledging the debt and expressing a willingness to pay it. *Ingram v. Earthman,* 993 S.W.2d 611, 634 (Tenn.Ct.App.1998). The payment of interest on a promissory note satisfies both requirements and extends the statute of limitations from the time of the payment. *Graves v. Sawyer,* 588 S.W.2d 542 (Tenn.1979).

█ *Graves v. Sawyer,* however, did not establish a per se rule that part payment of a debt extends the statute of limitations. In *C.A. Hobbs, Jr., Inc. v. Brainard,* 919 S.W.2d 337 (Tenn.Ct.App.1995), this court distinguished *Graves v. Sawyer* and said, "Thus, it still remains the law of this state that the maker of a note or his agent must acknowledge the existence of the debt and express a willingness to pay the debt in order to toll the statute of limitations." 919 S.W.2d at 339. In this case, there is no evidence that Mr. Binkley acknowledged a debt to Ms. Swett or expressed a willingness to pay her anything other than the amount of the check.

A payment of interest on a note by the maker is specifically referable to the debt, and it is a logical inference that the maker thereby acknowledged the debt and intends to pay it. A payment on an unliquidated disputed claim does not support the same inferences. That the payer was making a compromise payment in settlement of the entire claim is equally as plausible. We do not think that the payment by Mr. Binkley revived Ms. Swett's claim.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to appellant Juanita Swett.