IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 21, 2010 Session

## W. CURTIS JORDAN v. CHARLES CLIFFORD

**Appeal from the Circuit Court for Blount County**
**No. L-15574      Jon Kerry Blackwood, Judge**

_____

**No. E2009-01121-COA-R3-CV - FILED MAY 25, 2010**

_____

W. Curtis Jordan sued his former attorney, Charles Clifford, alleging breach of contract, fraudulent conversion of property, and violation of the Tennessee Consumer Protection Act ("the TCPA"). The case proceeded to a jury trial. At the close of Jordan's proof, the court dismissed the consumer protection claim based upon its holding that the TCPA did not apply to the providing of professional services by an attorney. As to the remaining claims, the jury returned a verdict in favor of Jordan for breach of contract and awarded him $2,500 in damages. On appeal, Clifford contends that the trial court erred in entering a judgment on the breach of contract claim and in failing to award him the attorney's fees he incurred in defending the consumer protection claim. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Charles M. Clifford, Maryville, Tennessee, appellant, Pro Se.

James H. Snyder, Jr., Alcoa, Tennessee, for the appellee, W. Curtis Jordan.

**OPINION**

I.

This case went to trial in September 2008. Three witnesses – Jordan, Jordan's wife, and Clifford – testified to the facts underlying the parties' dispute and the ultimate demise of their attorney-client relationship. We briefly summarize the proof presented at trial.[1]

Jordan and his wife reside in the Castaway Cove subdivision in Blount County. In February 2006, Jordan contacted Clifford, a licensed attorney, regarding a property matter. In short, Jordan reported to the attorney that a neighboring property owner had constructed a house that extended beyond the established set back line and obstructed a common easement that granted lake access to all property owners in the subdivision. Jordan paid Clifford $250 to "research the question." In early March 2006, upon completing his initial research, Clifford advised Jordan that he had a "great case." Clifford requested a retainer of $3,000 and, according to Jordan, promised to file a lawsuit within ten days of being paid in full. Later that month, Jordan fully paid the retainer fee in two equal installments, but Clifford did not file suit.

In April 2006, Clifford represented Jordan at a hearing before the Blount County Variance Committee at which the offending neighbor was seeking a variance from the set back line for his newly constructed home. Following the hearing, the requested variance was denied. According to Jordan, Clifford at that time again promised to file a lawsuit on his behalf, this time within ten days of the hearing date, but did not do so.

There was never a written agreement between the parties. On several occasions, Clifford came to Jordan's home to discuss the case and took numerous photographs with respect to the boundary lines of the properties at issue. According to Jordan, however, Clifford "seemed more interested in photography and discussing photography . . . than with the legal case. . . ." At the end of each such visit, Clifford would promise to file the lawsuit "within ten days." Jordan recalled that at one point, Clifford referred to the merits of the case as a "slam dunk."

From July 2006 forward, Jordan made no further efforts to communicate with Clifford about his case or his dissatisfaction with Clifford's services; Clifford admitted having "little to no contact" with his client during that period. On September 22, 2006, Jordan notified Clifford via a faxed letter that Clifford was terminated. The letter requested that Clifford return all of Jordan's payments within three days. Clifford refused to return any monies, but

---

[1]We observe that although a court reporter recorded the testimony at trial, no transcript of the evidence was filed. Instead, the parties rely on a Tenn. R. App. P. 24(c) statement of the evidence, as amended and approved by the trial court.

offered an accounting of his services. On October 11, 2006, Jordan received a letter detailing Clifford's time on the matter. The letter included Clifford's promise that he would provide Jordan with the photographs he had taken. Clifford sent Jordan a check for $750, but Jordan never negotiated it.

At trial, Clifford admitted that he did not follow the best standard of practice as set out in the Tennessee Rules of Professional Conduct, but stated that he had violated no ethical disciplinary rule. Clifford noted that the Rules suggested, but did not mandate, the use of a written retainer agreement between the parties. Clifford was not certain of everything he initially reviewed with Jordan regarding the terms of his employment. Clifford conceded he never gave Jordan a complete copy of his case file and that he had lost the photographs he had taken.

Jordan hired his current counsel, Mr. Snyder, in September 2006. As of the time of the trial, no suit had ever been filed by Jordan against his neighbor. At trial, Jordan offered no testimony regarding his claims under the TCPA. Mrs. Jordan testified that she was "distraught" over Clifford's failure to file a lawsuit and confirmed her husband's testimony to the effect that Clifford had promised to file suit but had failed to do so.

Called as an adverse witness, Clifford stated that he initially researched the issue of whether "a suit seeking the neighbor to move a portion of his house to comply with the [county and subdivision] setback lines could succeed." After working for "considerably more than one hour," Clifford found case law from other jurisdictions indicating that such an action could succeed. As a result, Clifford informed Jordan that he would take his case "for a retainer of three thousand dollars against an hourly rate of two hundred fifty dollars." Clifford asserted that, although there was no written agreement, he had reviewed with Jordan his fee agreement at length. Clifford denied ever promising to file a lawsuit on Jordan's behalf within ten days of receiving the retainer.

According to Clifford, he stood "ready, willing and able to continue representing [Jordan]" when he was fired in September 2006. Clifford agreed that he delivered to Jordan's new counsel a file containing only three pages. Clifford took the position, however, that he "had a good memory and the issues in [Jordan's case] were largely legal." Clifford calculated that he performed over nine hours of work on Jordan's case at the rate of $250, for a total cost of $2,250, and had refunded to Jordan the unearned balance of the retainer.

As previously noted, at the close of Jordan's proof, the trial court granted Clifford a directed verdict on the consumer protection claim. The remaining claims were submitted to the jury, which found in favor of Jordan on the breach of contract claim and awarded damages in the amount of $2,500. Following the denial of his post trial motions, including

a motion for directed verdict, dismissal, or new trial, motion for attorney's fees, and motion for remittitur, Clifford timely filed a notice of appeal.

## II.

As set forth in his brief, Clifford presents the following issues for our consideration:

> 1. Whether a claim by a client against his attorney styled "breach of contract" contains the same elements as one styled "legal malpractice."
>
> 2. Whether expert proof is required in a "breach of contract" action by a client against his attorney.
>
> 3. Whether the trial court erred in denying Clifford's claim for a portion of his attorney's fees under Tenn. Code Ann. § 47-18-109(e)(2).

## III.

Our standard of review of a judgment on a jury verdict is as follows:

> Our standard of review after a trial court approves a jury's verdict is limited to determining whether the record contains any material evidence to support the jury's verdict. Tenn. R. App. P. 13(d). *See also **Washington v. 822 Corp***., 43 S.W.3d 491, 494 (Tenn. Ct. App. 2000). The process of ascertaining the evidentiary support for a jury's verdict is extremely deferential to the verdict. *See **Kelley v. Johns***, 96 S.W.3d 189, 194-95 (Tenn. Ct. App. 2002). This narrow search for *any* material evidence is a procedural safeguard to a litigant's constitutional right of trial by jury; thus, it "requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." ***D.M. Rose & Co. v. Snyder***, 185 Tenn. 499, 206 S.W.2d 897, 901 (Tenn. 1947); *see **Kelley***, 96 S.W.3d at 194. This Court is not permitted to second-guess the jury's findings by reweighing the evidence to decide where it preponderates or to make our own credibility determinations. *See **Electric Power**

> ***Bd. of Chattanooga v. St. Joseph Structural Valley Steel Corp***.,
> 691 S.W.2d 522, 526 (Tenn. 1985).

***Ballard v. Serodino, Inc.***, No. E2004-02656-COA-R3-CV, 2005 WL 2860279, at *3 (Tenn. Ct. App. E.S., filed Oct. 31, 2005) (emphasis in original).

### IV.

In his first two issues, Clifford challenges the judgment on the jury's verdict on Jordan's breach of contract claim. More specifically, Clifford contends that the judgment must be reversed because the breach of contract claim: (1) is actually one for legal malpractice and (2) was not established by expert proof as required under Tennessee law. We address these related contentions together.

In denying Clifford relief from the judgment, the trial court noted the following:

> [Clifford's] motions allege that despite [Jordan's] theory of breach of contract, the complaint was one of legal malpractice. [Clifford] further argues that since [Jordan] did not present any expert legal witnesses on the issue of standard of care, this Court must grant his motion to dismiss the case.
>
> A legal malpractice case must "prove that the attorney's conduct fell below skill and diligence which is commonly possessed and exercised by attorneys practicing in the same jurisdiction . . . . [and] demonstrate a nexus between the negligence and the injury." ***Sanjines v. Ortwein & Assoc., P.C.***, 984 S.W.2d 907, 910 (Tenn. 1998). A cause of action for breach of contract accrues when one of the contracting parties "demonstrates a clear, total repudiation of the contract." ***Wilkins v. Third Nat'l Bank***, 884 S.W. 2d 758, 761 (Tenn. Ct. App. 1994). Tennessee courts look to the "gravamen of the complaint rather than its designation as an action in tort or contract." ***Keller v. Colgems-EMI Music***, 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996). To determine the gravamen of the complaint, courts "must look to the basis for which damages are sought." ***Id***.
>
> The complaint alleges that [Clifford] breached a contract with [Jordan] by failing to provide services that [Jordan] had paid for. The damages sought pursuant to this claim was the amount of

attorney fees paid by [Jordan]. There are no allegations in the complaint for legal malpractice.

Tennessee courts have made a clear distinction between a breach of contract action against an attorney and a legal malpractice action. In *Lewis v. Caputo*, . . . the plaintiff sued his former attorney for both legal malpractice and breach of contract. [T]he plaintiff alleged that the defendant attorney had failed to perform his cont[r]act. The court found that this allegation stated a cause of action for breach of contract. It is clear that the issues in a breach of contract and legal malpractice [action] are distinct and separate each requiring proof of different elements both as to liability and damages. Consequently, [the] plaintiff does not have to establish the standard of care in a breach of contract action. In the case at bar, [Jordan] sought damages only for the amount he alleged he paid [Clifford] for his purported services which [Jordan] alleged [Clifford] failed to provide. Therefore, there was ample evidence before the jury to sustain a verdict for breach of contract.

The essence of Clifford's argument is stated in his brief: "Whether it be styled negligence or contract, there is only one recognized action a client may bring for his attorney's breach of duty; a legal malpractice claim." Relying on case law and other authorities that speak to malpractice actions, Clifford urges that Jordan's complaint alleges a "breach of duty" by Clifford that is and can only be properly construed as a claim for legal malpractice rather than breach of contract. In upholding the verdict, however, the trial court expressly rejected Clifford's position, as do we.

In his complaint, Jordan simply alleged that "[Clifford] did not provide the services that [Jordan] paid him to perform." Without question, Jordan thereby raised a breach of contract claim. A breach of contract action arises "when the acts and conduct of one party evince an intention no longer to be bound by the contract." *Church of Christ Home for Aged, Inc. v. Nashville Trust Co.*, 184 Tenn. 629, 642, 202 S.W.2d 178, 183 (1947). A legal malpractice claim, on the other hand, requires proof of the following elements:

(1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause in fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages.

-6-

***Gibson v. Trant***, 58 S.W.3d 103, 108 (Tenn. 2001). In the present case, Jordan did not allege that Clifford was negligent in his handling of the case. Rather, he alleged that Clifford totally failed to perform his side of their bargain when he failed to file a lawsuit for Jordan as he had agreed to do. As the measure of his damages, Jordan sought the return of fees he had paid to Clifford under their contract. Such an allegation makes out a breach of contract claim because it is rooted solely in the terms of the oral contract the parties entered into. The allegation does not, however, make out a malpractice action as it "is not premised on a belief that the defendant failed to adhere to the professional standard of care required of Tennessee attorneys." ***Lewis v. Caputo***, No. E1999-01182-COA-R3-CV, 2000 WL 502833 at *4 (Tenn. Ct. App. E.S., filed Apr. 28, 2000).

The proof at trial, when viewed in "the strongest legitimate view of all the evidence to uphold the verdict," *see **Ballard*** at *3, clearly shows that the parties entered into an oral contract under which Clifford agreed to file a lawsuit within ten days of his receipt of a $3,000 retainer fee paid by Jordan. Although Clifford denied promising to file the lawsuit "within ten days," the jury heard from both parties and obviously resolved this dispute in Jordan's favor. "[D]eterminations regarding the credibility of the witnesses fall within the purview of the jury." ***Miller v. Williams***, 970 S.W.2d 497, 499 (Tenn. Ct. App. 1998). In any event, it is undisputed that, although Jordan paid Clifford the agreed upon fee in March 2006, suit was *never* filed and communications between the parties had basically ceased by the time Jordan fired Clifford some six months later.

As to Clifford's second issue, he correctly states the general rule that "cases of legal malpractice cannot be decided without expert proof regarding the applicable standard of care and whether the lawyer's conduct complies with this standard." ***Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.***, 813 S.W.2d 400, 406 (Tenn. 1991)(quoting ***Cleckner v. Dale***, 719 S.W.2d 535, 540 (Tenn. Ct. App. 1986)). As discussed above, we have rejected Clifford's position that the breach of contract claim raised in the present case is actually a mislabeled claim for legal malpractice. Accordingly, we also reject his contention that Jordan's breach of contract claim cannot be sustained without expert proof.

In summary, this Court concludes that the record contains material evidence to support the jury's verdict finding in favor of Jordan on the breach of contract claim.

V.

Clifford asserts that Jordan made no good faith effort to prosecute the claim brought under the TCPA, a claim Clifford contends is "without any foundation in law or in fact." He seeks an award of $1,791 in attorney's fees for a combined total of eight and a half hours that he and his attorney spent researching the applicability of the TCPA to the instant case.

With respect to an award of attorney's fees under the TCPA, Tenn. Code Ann. § 47-18-109(e)(2) provides in relevant part as follows:

> In any private action commenced under this section, upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorney's fees and costs.

The trial court summarily denied Clifford's motion for a partial recovery of his attorney's fees as follows: "[Clifford] has made a claim for attorney['s] fees and expenses incurred in defending the [TCPA] [claim]. This claim was dismissed by the Court. The Court denies that motion."

This Court has observed that a "consequence of a suit under the TCPA that is 'frivolous, without legal or factual merit, or brought for the purpose of harassment' is a *possible* imposition of fees against the party asserting such claim." ***Don Smith Ford, Lincoln-Mercury, Inc., v. Bolinger***, No. E2003-02764-COA-R3-CV, 2005 WL 711963, at *6 (Tenn. Ct. App. E.S., filed Mar. 29, 2005 (emphasis added)). In the present case, both parties assert a finding by the trial court that the TCPA "does not apply to attorneys" as the basis for the court's dismissal of the consumer protections claim.[2] Otherwise, the record contains only Clifford's motion to dismiss the TCPA claim, together with a supporting memorandum of law, and Jordan's response in opposition. As we have noted, the trial court ultimately dismissed the TCPA claim at the close of Jordan's proof.

As previously noted, the TCPA requires a finding that a claim brought thereunder is "frivolous, without legal or factual merit, or brought for the purpose of harassment" before a potential award of attorney's fees is triggered. In the instant case, the record fails to reflect

---

[2]The record before us contains no findings relating to the trial court's dismissal of the TCPA claim. In the order denying Clifford's post-trial motion for fees and costs, the court simply noted that it had "dismissed the claims filed under the [TCPA]."

any such finding. Moreover, on considering the matter, the trial court expressly rejected Clifford's request for attorney fees under Section 47-18-109(e)(2) of the TCPA. "As the language of the statute makes clear, even where this prerequisite is met, whether or not to award fees is discretionary with the court." **Glanton v. Bob Parks Realty, et al.**, No. M2003-01144-COA-R3-CV, 2005 WL 1021559, at * 9 (Tenn. Ct. App., M.S., filed April 27, 2005).

This Court reviews a trial court's decision on the subject of attorney's fees under the TCPA under the abuse of discretion standard. **Id**. "A finding of abuse of discretion is proper when the trial court applied an incorrect legal standard or reached a decision against logic or reasoning that caused an injustice to the party complaining." **Id**. (citing **Eldridge v. Eldridge**, 42 S.W.3d 82, 85 (Tenn.2001); **State v. Coley**, 32 S.W.3d 831, 833 (Tenn.2000)). On our review, we cannot say that the trial court abused its discretion in denying an award of attorney's fees related to the TCPA claim.

VI.

The judgment of the trial court is affirmed. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the court's judgment and the collection of costs assessed below. Costs on appeal are taxed to the appellant, Charles Clifford.

_____
CHARLES D. SUSANO, JR., JUDGE