Woodson H. **VANCE**, Petitioner,

v.

Emanuel **SCHULDER** et al., **Respondents.**

Supreme Court of Tennessee.

March 14, 1977.

Robert H. Goodall, Gallatin, James Donoho, Hartsville, Arthur E. McClellan, Gallatin, for petitioner.

James M. Manire, William W. Dunlap, Jr., Memphis, for amicus curiae Lloyd E. Clarke.

Herbert R. Rich, Nashville, for respondents.

George E. Morrow, Martin, Tate, Morrow & Marston, James W. McDonnell, Jr., Marion S. Boyd, Jr., Susan M. Callison, Canada, Russell & Turner, Memphis, for amicus curiae Kemmons Wilson, Wallace E. Johnson, Harris, Kerr, Forster & Company.

## OPINION

FONES, Justice.

The principal issue in this Court is the appropriate statute of limitations applicable to a suit based upon alleged fraudulent representations said to have induced the sale of stock for less than its value.

The five (5) individual defendants were the directors of Hartsville Manufacturing Corporation and of Consolidated Merchandising Corporation. Defendants owned substantially all of the stock of Consolidated Merchandising Corporation and ninety (90%) percent of the stock of Hartsville. Plaintiff, Woodson Vance, owned ten (10%) percent of the stock of Hartsville. Plaintiff filed suit June 23, 1972, alleging that one of defendants, Paul Schulder, "falsely and fraudulently and with intent to deceive and

defraud plaintiff" represented on June 18, 1968, that U. S. Industries, Inc. had offered to purchase Hartsville for $360,000; that said representation was false and known by all of defendants to be false; that in fact U. S. Industries had offered the defendants $708,000 for all of the stock of Hartsville; that plaintiff was induced to sell his ten (10%) percent interest in Hartsville for $36,-000 and that by reason of defendants' misrepresentation he suffered damages in the amount of $34,800.

Defendants denied that any false representation was made and asserted that in fact no separate sum for Hartsville stock was offered or paid by U. S. Industries; that the complaint showed upon its face that it was barred by the statute of limitations, and other defenses.

The material evidence adduced at the trial was as follows:

Hartsville was originally a cabinet shop in which plaintiff was a one-third partner. In 1959 defendants, or a wholly owned corporation of which they were directors and stockholders, bought fifty (50%) percent of Hartsville and later purchased an additional forty (40%) percent with plaintiff retaining ten (10%) percent. Plaintiff was the plant manager and was paid a weekly salary and received an annual bonus of three (3%) percent of the profits before taxes. His contacts with defendants and the parent corporation owned by them were limited almost entirely to Paul Schulder who came to Hartsville frequently and plaintiff was in touch with him on the phone almost daily. The corporate books were kept in New York but he received annual statements and balance sheets from the company. He acknowledged that he could read a financial statement. He testified that Paul Schulder came to Hartsville on June 18, 1968, and told him that the parent corporation, Consolidated Merchandising, had a chance to sell all of the stock of Hartsville; that in order to do so they needed his stock; that they were going to sell to U. S. Industries for $360,000. Plaintiff agreed and executed a ninety (90) day option to sell his stock in

Hartsville to defendant for $12,000 cash, $12,000 in sixty (60) days after the exercise of the option and the balance ninety (90) days thereafter. The option was exercised on July 16, 1968.

It was also a part of the agreement that plaintiff would continue as plant manager after the sale to U. S. Industries. Plaintiff testified that in February, 1972, he learned for the first time that U. S. Industries had paid approximately twice the figure of $360,000 for the stock of Hartsville.

Phillip Holder, a certified public accountant testified for the plaintiff. He had no personal knowledge of the negotiations but he had examined the agreement and plan of reorganization between U. S. Industries and Consolidated Merchandising Corporation and the balance sheets and earnings statements of the selling corporation and its six (6) subsidiaries for the purpose of giving his opinion of the value that U. S. Industries might have placed upon the Hartsville stock in arriving at the total sum paid for the seven (7) corporations. The only figure appearing on the face of the sale agreement was the total selling price paid at the time of closing, June 25, 1968, which was $4,867,-000. This sum was to be paid by issuing its equivalent in value of U. S. Industries common stock at its closing price on the New York Stock Exchange on said date. The agreement provided that U. S. Industries would issue and deliver to Consolidated Merchandising additional shares for each of the calendar years 1968 through 1972 wherein pre-tax profits exceeded specified amounts. In accordance with the formula specified in the contract additional shares having a value of $1,926,232 were received by Consolidated in 1969 and $1,428,717 in 1970. No additional shares were due in 1971 or 1972 and thus the total sum received for the seven (7) corporations, paid in shares of stock of U. S. Industries, was $8,221,949. The witness Holder compared Hartsville's book value and performance with that of the Consolidated group, using four different methods of accounting which produced values ranging from $582,837 to

$762,218.[1] He conceded that these figures did not give any consideration to intangibles, such as good will, trade names owned by corporations in the group other than Hartsville, nor to any advantages or disadvantages of the sale of seven (7) corporations in one package.

Defendant Paul Schulder denied telling plaintiff that the company would be sold for a specified sum. He said that the book value of Hartsville at the time of sale was approximately $230,000 but the Board of Directors decided that for the purpose of purchasing plaintiff's stock they were willing to consider that the book value was $360,000; that said value had no relation to any figure placed on Hartsville stock to be paid by U. S. Industries; that no separate value was established for the Hartsville Corporation either in the negotiations or the documents. He emphasized the fact that payment by U. S. Industries was not in cash, which plaintiff received, but in U. S. Industries stock; that restrictions were placed upon the sale of that stock in the hands of the sellers; and that the only assured payment was the $4,867,000, in stock issued June 25, 1968.

The learned Chancellor held that any statute of limitations applicable had been tolled because plaintiff had not discovered the fraud until a few months before the complaint was filed. He found that a fraud had been perpetrated on plaintiff and entered judgment for $34,800 plus interest.

The Court of Appeals reversed finding T.C.A. § 28–305, the three (3) year statute of limitations for tortious property damage, to be applicable and not tolled because plaintiff had not exercised reasonable diligence in attempting to discover the fraud. We agree with the results reached by the Court of Appeals on both issues.

■ Plaintiff testified that Schulder showed him brochures from U. S. Industries, but admitted that he made no inquiry about any of the details of the proposed sale to that company. Plaintiff made no effort to show that he could not have obtained the full facts about the sale before it was consummated or immediately thereafter. The stock of U. S. Industries, Inc. was traded on the New York Stock Exchange in 1968. A full and complete description of the transaction between U. S. Industries and Consolidated Merchandising Corporation was filed with the Exchange. We cannot escape the conclusion that the fraud alleged by plaintiff was not of such a character as to conceal itself and that all of the facts upon which he relies in this case have been available to him, upon reasonable inquiry, continuously since June, 1968.

The applicable rules were stated by the Court of Appeals.

"Mere ignorance and failure of the plaintiff to discover the existence of a cause of action is not sufficient to toll the running of the statute of limitations. *Hall v. DeSaussure*, [41 Tenn.App. 572, 297 S.W.2d 81 (1956)], and numerous cases. There is an exception to this rule. Fraudulent concealment of the cause of action by the defendant tolls the statute of limitations. It begins to run as of the time of the discovery of the fraud by the plaintiff. *Boro v. Hidell*, 122 Tenn. 80, 120 S.W. 961 (1909); *Bodne v. Austin*, [156 Tenn. 353, 2 S.W.2d 100 (1928)]; *Howell v. Davis*, [43 Tenn.App. 52, 306 S.W.2d 9 (1957)]; and numerous cases. To come within this exception, the plaintiff must prove that the defendant took affirmative action to conceal his cause of action and that he, the plaintiff, could not have discovered his cause of action despite exercising reasonable diligence. *Redwood v. Raskind*, 49 Tenn.App. 69, 350 S.W.2d 414 (1961); *Hudson v. Shoulders*, 164 Tenn. 70, 45 S.W.2d 1072 (1932); *Woodfolk v. Marley*, 39 S.W. 747 (Tenn. Ch.App.1896), aff. 98 Tenn. 467, 40 S.W. 479 (1897); *Patten v. Standard. Oil Co. of Louisiana*, 165 Tenn. 438, 55 S.W.2d 759

---

1. These methods were, book value, after tax profits, selling price times book value and multiple of after tax earnings.

(1933); *Ray v. Scheibert*, 224 Tenn. 99, 450 S.W.2d 578 (1959); see 51 Am.Jur.2d, Limitations of Actions, § 148 pp. 719–720."

At various stages of this litigation, the parties have relied upon each of five (5) possible statutes of limitations; T.C.A. § 28–304, the one (1) year statute of limitations for tortious personal injury; T.C.A. § 28–305, the three (3) year statute of limitations for tortious property damage which was applied by the Court of Appeals; T.C.A. § 28–309, the six (6) year statute of limitations for contract; T.C.A. § 47–2–725, the Tennessee Commercial Code statute of limitations for sales and T.C.A. § 28–310, the ten (10) year statute for all cases not expressly provided for.[2]

■ The applicable statute of limitations in a particular cause will be determined according to the gravamen of the complaint. *Swauger v. Haury & Smith Contractors, Inc.*, 512 S.W.2d 261, 262 (Tenn. 1974); *Carney v. Smith*, 222 Tenn. 472, 437 S.W.2d 246 (1969); *Brown v. Dunstan*, 219 Tenn. 291, 409 S.W.2d 365 (1966).

In this determination it is important to distinguish this transaction from the more typical situations where corporate directors or officers with inside information purchase or sell stock detrimentally to stockholders at large. In this state and the majority of jurisdictions the common law imposed no fiduciary duties on directors or officers with regard to trading stock with general stockholders. It was said that directors could trade as if outsiders. *Shaw v. Cole Mfg. Co.*, 132 Tenn. 210, 177 S.W. 479 (1915); 2A *Fletcher Cyclopedia Corporations* § 1168.1, 283 (1975).[3] Actions based on such fiduciary breaches, if allowed, would be quasi-contractual in nature and thus the six (6) year statute would be applicable. *Wallace v. Lincoln Savings Bank*, 89 Tenn. 630, 15 S.W. 448 (1891).

However, the gravamen of the present case is fraud in the inducement of a contract, the old common law action of deceit. Plaintiff alleges damages resulting from face to face misrepresentations of material facts which induced him to sell his stock at a much lower figure than reasonable. He bases his prayer for $34,800 damages solely on and as a proximate result of defendant's misrepresentations.

■ An individual induced by fraud to enter into a contract may elect between two remedies. He may treat the contract as voidable and sue for the equitable remedy of rescission or he may treat the contract as existing and sue for damages at law under the theory of "deceit." The latter is grounded in tort.

"Thus, a person who has been injured by the fraud of another or others, by either a party or parties to a transaction or a third party or third parties committing fraudulent acts involving or bringing about the negotiation of a transaction, such transaction usually but not necessarily involving business or commercial dealings, may maintain an action at law in tort or recover damages for the injury received from the fraud and deceit perpetrated by such other or others. The foundation of the action is not contract, but tort." 37 Am.Jur.2d Fraud and Deceit § 332 at 439.

Tennessee Code Annotated § 28–305 provides as follows:

"28–305. *Property tort actions—Statutory liabilities—Alienation of affections.*—Actions for injuries to personal or real property, actions for the detention or conversion of personal property, civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages

---

**2.** T.C.A. § 48–1652 effective May 28, 1975, not applicable to the instant case, provides a two (2) year statute of limitations governing the type of action involved herein.

**3.** The harshness of this rule has resulted in various statutory provisions prohibiting or reg-ulating inside trading. See T.C.A. § 48–1601 et seq.; The Securities Act of 1933, 15 U.S.C.A. § 77a et seq. and The Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq.

or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability, and actions for alienation of affections, shall be commenced within three (3) years from the accruing of the cause of action."

It is urged upon us that, in substance, the alleged fraudulent misrepresentation as to expectation of profitability, or to value of a stock, that results in monetary loss cannot be considered an "injury to property" in the classic tort sense of the word.

This argument is predicated upon a narrow definition of the word "injury" as used in the property tort actions three (3) year statute, and the notion that torts, in the classic sense, result only in physical damage.

Injury is defined in Black's Law Dictionary, Revised Fourth Edition as:

"*INJURY.* Any wrong or damage done to another, either in his person, rights, reputation, or property. *Woodruff v. Mining Co.*, C.C.Cal., 18 F. 781 [753]; *Hitch v. Edgecombe County*, 132 N.C. 573, 44 S.E. 30. . . .

The words 'damage,' 'loss,' and 'injury' are used interchangeably, and, within legislative meaning and judicial interpretation, import the same thing. *In re City of Pittsburgh*, 90 A. 329, 331, 243 Pa. 392, 52 L.R.A., N.S., 262."

In *Brown v. Dunstan, supra*, this Court rejected the contention that injury to the person in T.C.A. § 28–304 is limited to bodily injury. In doing so the Court expressly approved the rationale in *Commerce Oil Refining Corporation v. Miner*, 98 R.I. 14, 199 A.2d 606 (1964) and quoted the following from said opinion:

"The issue presented to us for decision clearly points up the ambiguity of the statutory language 'injuries to the person.'

* * * did the legislature contemplate applying the two-year limitation to actions arising from bodily or physical injuries only or to apply it broadly to actions brought to recover damages arising out of the restriction, invasion, or impairment of rights and privileges which are personal to the suitor?

\* \* \* \* \* \*

It is then our conclusion that the phrase 'injuries to the person' as used in the instant statute is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property. 199 A.2d 606." 219 Tenn. at 294, 295, 409 S.W.2d at 367.

Brown alleged that defendants had entered into a conspiracy to defraud and discredit him and oust him from his position with First Trust Company and that as a result of specified wrongful acts he had been reduced from his former status in the business and civic world of Chattanooga to one of abject pauperism and rendered incapable of regaining his former wealth or earning a living. The Court held that the gravamen of the action was damages to the plaintiff's reputation as a businessman, father and respected man of society and that such damages are included within "for injury to the person" as that phrase is used in T.C.A. § 28–304. Brown's cause of action was held to be barred by the one (1) year statute.

■ We deem it appropriate to apply the rationale of *Brown* to the property tort action statute. We reject the notion that injury to property as contemplated therein is limited to physical injury to property. In our opinion, the loss in value sustained by plaintiff from the alleged tort of fraud and deceit is included within the phrase, "injuries to personal property" as contemplated in T.C.A. § 28–305.

We note that a similar result was reached by this Court in *Budget Rent-A-Car of*

*Knoxville, Inc. v. Car Serv., Inc.*, 225 Tenn. 342, 469 S.W.2d 360 (1971). The complainants alleged a conspiracy which was said to have forced the sale of their business to their loss and damage. Defendants relied upon the three (3) year statute of limitations applicable to property tort actions. The Court sustained that defense, and without extensive analysis said: "Conspiracy is a tort and is subject to the running of the statute of three years." 469 S.W.2d at 362.

There is respectable judicial authority in other states, whose statutes of limitation are similar to ours, that would result in application of the six (6) year statute, and others the ten (10) year statute. We have read all of the cases and given consideration to all of the excellent arguments in the briefs of the parties and those of the two (2) amici curiae. We readily concede that a close question is presented between the choice of the three (3) year statute, the six (6) year statute, and the ten (10) year statute. Nevertheless, we are persuaded that the Court of Appeals was correct in applying the three (3) year statute.

The judgment of the Court of Appeals dismissing plaintiff's action is affirmed. Costs are assessed against plaintiff, Woodson Vance.

COOPER, C. J., and BROCK and HARBISON, JJ., concur.

HENRY, J., not participating.