**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:   14a0124n.06**

**No. 13-5793**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SAMUEL R. HUMPHREYS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BANK OF AMERICA; BAC HOME | ) | WESTERN DISTRICT OF TENNESSEE |
| LOANS SERVICING LC, f/k/a Countrywide | ) | |
| Home Loans Servicing, LP, Corp., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before:   MOORE and COOK, Circuit Judges; GWIN, District Judge[*]

COOK, Circuit Judge.   In this deceptive-mortgage-refinancing case, homeowner Samuel

Humphreys sued Bank of America and BAC Home Loans Servicing, LP (collectively "the

financial institutions"), alleging violations of the Truth in Lending Act (TILA) and the Tennessee

Consumer Protection Act (TCPA), and seeking to set aside his adjustable-rate mortgage (ARM)

for fraudulent inducement and negligent and intentional misrepresentation.   In separate orders,

the district court: (1) dismissed as untimely the fraud-in-the-inducement and misrepresentation

claims, as well as the portion of the TCPA claim targeting deceptive acts leading up to the loan;

and (2) granted summary judgment to the financial institutions on the remaining TILA and TCPA

---

[*]The Honorable James Gwin, United States District Judge for the Northern District of
Ohio, sitting by designation.

claims, finding them unsubstantiated and—for some of the TCPA arguments—forfeited as beyond the scope of the pleadings. Humphreys appeals, renewing several of his district-court arguments. We AFFIRM in part and REVERSE in part.

I.

We briefly recap the relevant facts thoroughly detailed in the district court's opinions. On May 14, 2004, Humphreys refinanced his home mortgage with Countrywide Home Loans, Inc. ("Countrywide") via an $800,000, 30-year Pay Option ARM ("the mortgage"). The mortgage came with an initial monthly payment of $2,666.01, an initial interest rate of 1.25%, annual rate changes measured by twelve-month treasury-yield averages, and a rate cap of 9.95%. Countrywide's representations led Humphreys to believe that he had the option of making either interest-only payments or principal payments. Although purportedly an experienced financial adviser, Humphreys did not realize that the interest rate would change monthly, that his minimum payment would increase 7.5% each year, and that his loan would convert to a fully amortizing loan after five years. He claims that Countrywide concealed these loan terms and misled him regarding the nature of his mortgage.

Beginning in May 2005 and each May thereafter, Humphreys received notices of increases to his monthly payments. Substantial principal increases soon followed, as depicted in this thoughtful chart utilized by the district court.

| Date | Minimum Monthly Payment | Increase from May 2004 Payment | Amount of Principal | Increase from May 2004 Principal |
|---|---|---|---|---|
| May 2004 | $2,666.01 | - | $800,000.00 | - |
| May 2005 | $2,865.96 | $199.95 | - | - |
| May 2006 | $3,080.91 | $414.90 | $801,939.29 | $1,939.29 |
| May 2007 | $3,311.98 | $645.97 | $818,393.03 | $18,393.03 |
| May 2008 | $3,560.38 | $894.37 | $832,823.46 | $32,823.46 |
| May 2009 | $4,024.19 | $1,358.18 | - | - |

(*See* R. 24, Am. Compl. ¶¶ 67, 75–82.)

In jeopardy of losing his home, Humphreys contacted the loss mitigation department of Bank of America (BOA), which had acquired Countrywide Home Loans Servicing, LP (known by this time as BAC Home Loans Servicing, LP) and continued to service its loans. After loan-modification attempts proved unsuccessful, Humphreys filed suit in state court in May 2011, alleging fraudulent inducement, violations of TILA and the TCPA, and intentional and negligent misrepresentation. As relevant here, the TILA claim centered on BOA's failure to notify plaintiff of its acquisition of his loan, in violation of Regulation Z, and the TCPA claims encompassed, *inter alia*, BOA's failure to facilitate a loan modification, contrary to the guidelines of the federal Home Affordable Modification Program (HAMP) and Countrywide's settlement with the State of Tennessee. (*See* R. 24, Am. Compl. ¶¶ 95–101; *id.* ¶¶ 106–12; *see generally* R. 45-7, Agreed

Final Judgment.)   The financial institutions removed the matter to federal court and, as noted above, the district court dismissed several of the claims as untimely and granted summary judgment to the financial institutions on the TILA and TCPA claims.   Humphreys timely appeals.

## II.

Before reaching the merits, we take up the financial institutions' jurisdictional argument that Humphreys's notice of appeal failed to preserve the claims rejected in the court's 12(b)(6) dismissal order.   *See* Fed. R. App. P. 3(c)(1)(B) (requiring that the notice of appeal "designate the judgment, order, or part thereof being appealed").   Although his notice designates only the "final Judgment dismissing the case entered in this action on May 13, 2013," our cases have long recognized that a general notice of appeal from a final judgment encompasses related non-final rulings and orders.   *E.g.*, *Gipson v. Vought Aircraft Indus.*, 387 F. App'x 548, 553 (6th Cir. 2010); *McLaurin v. Fischer*, 768 F.2d 98, 101–02 (6th Cir. 1985); *see also* Charles Alan Wright et al., 16A Federal Practice & Procedure § 3949.4 (4th ed.) ("A notice of appeal that names the final judgment suffices to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders . . . .").   Accordingly, because the general notice of appeal preserved his claims, we have jurisdiction under 28 U.S.C. § 1291.

## III.

On appeal, Humphreys challenges the statute-of-limitations dismissal of his fraudulent inducement and misrepresentation claims and also the adverse judgment on his TILA and TCPA

claims.[1]  We review these matters de novo under the standards applicable to Rule 12(b)(6) and Rule 56 motions for dismissal and summary judgment.  *Bartholomew v. Blevins*, 679 F.3d 497, 499 (6th Cir. 2012); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012). Consequently, we accept as true his well-pleaded allegations and draw reasonable inferences in his favor, as appropriate.

*A. Dismissal of Fraudulent Inducement Claim*

Beginning with the fraudulent inducement claim, Humphreys contends that his claim would be timely if the district court employed Tennessee's seven-year statute of limitations for adverse possession, Tenn. Code Ann. § 28-2-103(a), instead of the three-year period applicable to "injuries to personal or real property," *id.* § 28-3-105.  In his view, his inducement claim seeking rescission of the mortgage is akin to "fraudulent conveyance" actions subject to the seven-year limit.  *See Orlando Residence, Ltd. v. Nashville Lodging Co.* ("*Orlando II*"), 104 S.W.3d 848, 853 (Tenn. Ct. App. 2003); *Jordan v. Marchetti*, No. 01A01-9607-CH-00340, 1997 WL 629955, at *2–3 (Tenn. Ct. App. Oct. 14, 1997).  Yet, as the district court explained, § 28-2-103, titled "Adverse possession; time; extent," applies to actions for "the recovery of lands."  *Id.* § 28-2-103(a).  The cases upon which appellant relies acknowledge this point.  *See Orlando II*, 104 S.W.3d at 853 (noting that the seven-year limit applies to an "action to set aside the fraudulent conveyance" of land); *Jordan*, 1997 WL 629955, at *3 (same); *see also Orlando Residence Ltd. v. Nashville Lodging Co.* ("*Orlando I*"), No. 01A-01-9606-CH-00256, 1996 WL 724915, at *3–4

---

[1]Humphreys abandons the untimely portion of his TCPA claim, which alleges unfair acts related to the origination of the loan.

(Tenn. Ct. App. Dec. 18, 1996) (collecting authority demonstrating that the seven-year period governs claims "for the recovery of real estate," and applying that limitations period only to the portion of plaintiff's action "to set aside the allegedly fraudulent conveyance" of land).

Despite characterizing his claim as a fraudulent land transfer, Humphreys seeks to set aside a loan agreement. (*See* R. 24, Am. Compl. ¶ 1 ("Plaintiff, Samuel R. Humphreys, brings this action for rescission."); *id.* ¶ 104 (asserting fraudulent inducement to "enter into a very toxic and exploitative loan agreement, which caused him significant damage and . . . should be rescinded by the Court"); *id.* Prayer for Relief ¶ 2 (asking "[t]hat the Court enter an order rescinding the Promissory Note and Deed of Trust executed by the Plaintiff regarding the property in question . . . and requiring the plaintiff to make restitution of the loan proceeds, with credit for all payments made toward restitution of the principal indebtedness").) Because Humphreys's amended complaint cannot be read as seeking the "recovery of lands," the seven-year period does not apply.

But the district court's application of the three-year period set by § 28-3-105, the property-injury provision, is not right either. In *Vance v. Schulder*, the Tennessee Supreme Court held that the fraudulent-inducement plaintiff "may elect between two remedies": (1) "treat the contract as voidable and sue for the equitable remedy of rescission," or (2) "treat the contract as existing and sue for damages at law under the theory of 'deceit.'" 547 S.W.2d 927, 931 (Tenn. 1977). The district court understandably relied on *Vance*'s conclusion that the property-injury

provision applies to the second theory, *id.* at 931–32,[2] but unlike *Vance*, this case arises under the equitable approach of the first, as demonstrated by the above-quoted portions of the Amended Complaint. *Vance*'s silence on that limitations period requires us to dig deeper into Tennessee law, mindful of its instruction that the gravamen of the complaint determines the appropriate statute of limitations. *Id.* at 931; *see also Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 29 (Tenn. Ct. App. 2010) (explaining that Tennessee courts look to the "object" of the action). "[T]he major criterion in ascertaining the gravamen of the action is the kind of damage alleged." *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, 729 (Tenn. Ct. App. 1980); *see also Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:07–CV–258, 2009 WL 736007, at *10 (E.D. Tenn. Mar. 17, 2009).

At least one Tennessee appellate court has applied the three-year property-injury provision to a fraudulent-inducement claim for rescission, reasoning from the state's 19th century precedents that "equity follows the law"—i.e., the limitations governing legal remedies also apply to equitable remedies. *Prescott v. Adams*, 627 S.W.2d 134, 137 (Tenn. Ct. App. 1981).[3] *Prescott*, however, concerned actual, physical damages to real property, the result of a mudslide—thus, an

---

[2]*Vance*, it appears, applied a predecessor to § 28-3-105: Tenn. Code Ann. § 28-305 (1977). Like the current provision, § 28-305 prescribed a three-year limitations period for "[a]ctions for injuries to personal or real property." *See Vance*, 547 S.W.2d at 931.

[3] Another appellate court recognized that the three-year limitations period governed intentional misrepresentation claims, which the court equated to fraudulent inducement claims. *Med. Educ. Assistance Corp. v. State ex rel. E. Tenn. State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999). Yet, because the case lacked an action for rescission, the court had no occasion to engage in *Vance*'s equity versus damages analysis or address alternative statutes of limitations.

action "for injuries to personal or real property," as contemplated in the property-injury provision. *See Prescott*, 627 S.W.2d at 135–36; *see also Mid-South Indus.*, 342 S.W.3d at 31 ("[R]egardless of whether a complaint sounds in contract, if the suit seeks to recover damages for injuries to the plaintiff's property, the applicable limitations period is three years as found in Tenn. Code Ann. § 28–3–105.") (citation omitted).

Humphreys alleges that Countrywide misrepresented and concealed exploitative terms in his adjustable-rate-mortgage, resulting in negative amortization of his loan and drastic increases in his monthly payments. (*See* R. 24, Am. Compl. ¶¶ 58–85.) Though Humphreys seeks damages for statutory and regulatory violations (and also injunctive relief to protect him from foreclosure, *see id.* Prayer for Relief ¶¶ 3, 5, 7), the gravamen of his fraudulent inducement claim is the financial loss of accepting an unfair loan, one he seeks to set aside.

Under similar circumstances—albeit, with an insurance company seeking rescission of a policy due to a borrower's deceit—a federal court rejected the property-injury period, opting instead for Tennessee's ten-year catchall statute of limitations, Tenn. Code Ann. § 28-3-110(3).[4] *Home Guar. Ins. Corp. v. Third Fin. Servs., Inc.*, 694 F. Supp. 438, 439–40 (M.D. Tenn. 1988) (order). The court's analysis flowed from *Vance*:

> In this case, plaintiff has brought the action under the first prong of the
> Tennessee Supreme Court's analysis: this is solely an equitable action for

---

[4]This statute grants a ten-year limitations period to "[a]ll other cases not expressly provided for." Tenn. Code Ann. § 28-3-110.

> rescission that asserts the contract was void ab initio. It is neither an action in tort (for no injury has yet occurred) nor an action on the contract (for plaintiff asserts the contract never came into existence). Hence, neither the three year statute on tortious damage to property nor the six year statute for actions on the contract are applicable.

*Id.* at 439. *Dobson v. Marion County*, an unpublished Tennessee appellate decision, lends some support for this view, but the court hedged its statute-of-limitations decision, finding the rescission claim time-barred under either the ten-year catchall provision, Tenn. Code Ann. § 28-3-110(3), or the six-year period for "[a]ctions on contracts not otherwise expressly provided for," Tenn. Code Ann. § 28-3-109(a)(3). *Dobson v. Marion Cnty.*, No. M2004-02154-COA-R3-CV, 2006 WL 1026422, at *4 (Tenn. Ct. App. Apr. 18, 2006) (citing *Aschbacher v. Woods*, No. M2003-02616-COA-R3-CV, 2005 WL 473468 (Tenn. Ct. App. Mar. 1, 2005)); *see also Eldrige v. Savage*, No. M2012–00973–COA–R3–CV, 2012 WL 6757941, at *2 (Tenn. Ct. App. Dec. 28, 2012) (acknowledging the parties' agreement that the ten-year catchall provision applied to an equitable claim for rescission).

The language of the relevant statutes and the decisions in *Dobson* and *Home Guaranty* persuade us to reject the district court's conclusion that § 28-3-105's three-year limitations period bars Humphreys's claim. Because the pleadings yield no definitive answer regarding the timeliness of this claim under longer limitations periods, *see* Tenn. Code Ann. §§ 28-3-109(a)(3), 28-3-110(3), we reverse as premature the Rule 12(b)(6) dismissal of this claim. *See, e.g.*, *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (recognizing that a motion to dismiss generally "is an 'inappropriate vehicle'" for a statute-of-limitations defense, unless the

pleadings "affirmatively show that the claim is time-barred"); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (same).

*B. Dismissal of Misrepresentation Claims*

The parties agree, however, that the property-injury provision's three-year period applies to the misrepresentation claims. *E.g.*, *Ne. Knox Util. Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006) (negligent misrepresentation); *Med. Educ. Assistance Corp. v. State ex rel. E. Tenn. State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999) (negligent and intentional misrepresentation). Although intentional misrepresentation claims can overlap with fraudulent inducement claims, *see Med. Educ. Assistance Corp.*, 19 S.W.3d at 817 ("Intentional misrepresentation in Tennessee is fraud in the inducement of a contract, the old common law action of deceit . . . ."), we agree that the property-injury provision controls appellant's negligent misrepresentation claim.

On appeal, Humphreys disputes only the district court's finding that his misrepresentation claims accrued in May 2006, noting that (i) his loan converted to a "fully amortizing loan" in 2009, and (ii) he first learned "of the most egregious loan terms [in] the summer of 2010." (Appellant Br. at 30.) Using either of those dates, his claim would be timely. As with the fraudulent inducement claim, Tennessee applies the discovery rule to misrepresentation claims—the "cause of action accrues . . . when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *Med. Educ. Assistance Corp.*, 19 S.W.3d at 817; *see also City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996).

The district court correctly rejected plaintiff's later accrual date, because the Amended Complaint reveals that he received annual notices of loan-payment increases as early as May 2005 (effective July 2005), with loan amortization occurring as early as May 2006. (*See* R. 24, Am. Compl. ¶¶ 75–82.) Moreover, Humphreys admits to inquiring about the payment increases "[w]hen [he] *began* to get notices of [them]." (*Id.* ¶ 87 (emphasis added); *see also* Appellant Reply Br. at 4–5.) Accepting these allegations, which highlight two of Humphreys's loan-related injuries (*id.*¶¶ 58–59), we agree with the district court that appellant reasonably should have known of the alleged misrepresentations in May 2006, if not sooner. His original complaint in May 2011 thus missed the three-year filing window, *see* Tenn. Code Ann. § 28-3-105, and we affirm the district court's dismissal of this untimely claim.

To the extent that Humphreys's intentional misrepresentation claim coincides with his fraudulent inducement claim in seeking rescission of the loan, he may pursue that theory as part of his fraudulent inducement claim. *See Med. Educ. Assistance Corp.*, 19 S.W.3d at 817. Yet, inasmuch as it presents an independent claim for damages, the claim is likewise time-barred under § 28-3-105.

*C. Summary Judgment on TILA Regulation Z Claim*

Next, Humphreys challenges the district court's denial of his TILA claim, arguing that BOA beneficially acquired the mortgage's promissory note and deed of trust when it merged with BAC Home Loans Servicing, LP (formerly a Countrywide entity[5]), but failed to disclose the loan

---

[5]We note Humphreys's apparent confusion between Countrywide Home Loans, Inc., the original owner of his loan, and Countrywide Home Loans Servicing, LP, the entity that became

transfer in violation of 15 U.S.C. § 1641(g)(1) and 12 C.F.R. § 226.39(a)(1). This reporting requirement, however, applies only to "new owner[s] or assignee[s] of the debt," 15 U.S.C. § 1641(g)(1), and, as the district court observed, Humphreys fails to identify any evidence demonstrating defendants' acquisition of the loan after the disclosure-requirement's May 2009 effective date. *See* Helping Families Save Their Homes Act of 2009, Pub. L. No. 111–22 § 404, 123 Stat. 1632, 1658 (May 20, 2009) (amending TILA § 131, 15 U.S.C. § 1641); 74 Fed. Reg. 60143-01, 60143 (Nov. 20, 2009). This evidentiary default justified summary judgment. *See* Fed. R. Civ. P. 56(c)(1) (obliging a party asserting or disputing a fact to "cit[e] . . . particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute"); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992) ("[I]f the non-moving party fails to discharge [the summary judgment] burden—for example, by remaining silent—its opportunity is waived and its case wagered.").

Eliding this omission, Humphreys challenges the admissibility of BOA's evidence that Countrywide transferred the loan to a third-party trust in July 2006: an affidavit by Assistant Vice President-Mortgage Resolution Associate Jeremy N. Klos-Mayhall. (R. 40-7, Klos-Mayhall Aff. ¶ 7 ("According to [BOA's] business records, sometime on or about July 7, 2006, the Loan was transferred to ZUNI 2006-OA1, which is the current owner of the Loan.").) Specifically, he impugns Klos-Mayhall's account as hearsay ineligible for the business-records exception under

BAC Home Loans Servicing, LP. (*See* Appellee Br. at 25; R. 40-3 Adjustable Rate Note.) BOA points to this misunderstanding as further undermining plaintiff's claim that BOA acquired his loan, but Humphreys responds that BOA acquired both Countrywide entities. (Appellant Reply Br. at 6–7; R. 45-7, Agreed Final Judgment at 2.) We need not resolve this factual dispute raised for the first time on appeal.

Federal Rule of Evidence 803(6). Though the financial institutions failed to supply the "records" alluded to in the assistant vice president's affidavit, and it appears they no longer have the original transfer records, their neglect does not excuse plaintiff from showing their acquisition of the loan after the disclosure requirements took effect in May 2009.

The motion for summary judgment, statement of material facts, Klos-Mayhall's deposition testimony regarding his review of BOA's business records, and BOA's answers to interrogatories all informed Humphreys that BOA denied ownership of his loan during this period. (R. 40-1, MSJ Br. at 8; R. 40-2, Statement of Material Facts ¶ 4; R. 45-4, Klos-Mayhall Dep. at 31–32; R. 45-6, Def.'s Responses to Interrogatories at 5–7.)[6] Humphreys needed to come forward with evidence disputing this claim or, at a minimum, certify his inability to present these "essential" facts. *See* Fed. R. Civ. P. 56(d). He did neither, opting instead to rely on BOA's 2011 merger with BAC Home Loans Servicing, LP. (R. 45, Pl.'s Resp. Br. at 12.) But a merger between BOA and a company that may have *once* owned his loan will not suffice, because it cannot demonstrate BOA's acquisition of the loan during the relevant period.

---

[6]Although his familiarity with BOA's records-keeping procedures may enable him to lay a foundation for BOA's business records as a "qualified witness" under Rule 803(6), *see Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 575–76 (6th Cir. 1999), Mr. Klos-Mayhall's testimony differs in kind from the "record[s]" permitted by Rule 803(6), and offers no firsthand knowledge of the alleged loan transfers. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ."). Still, as BOA's Rule 30(b)(6) representative, he may "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). We are satisfied, for present purposes, that BOA's motion satisfied the burden of production, requiring Humphreys to present evidence of BOA's acquisition of his loan after May 2009.

Finally, Humphreys contends that BOA's interrogatory answers "admit[]" that the note and deed "may not have been assigned to [the trust]," suggesting inconsistencies in BOA's position. (Appellant Br. at 17.)   To the contrary, the interrogatory answer "states that the MERS milestones [for plaintiff's loan] indicate" numerous transfers, a penultimate transfer to BOA, and a final transfer to "U.S. Bank, N.A. as trustee for Zuni Mortgage Loan Trust 2006-OA1," with the caveat that "Defendant . . . cannot *verify the accuracy of this information* or that there would be any documents which would evidence such transfers."   (R. 45-6, Def.'s Responses to Interrogatories at 5–6 (emphasis added).)   Regardless, this statement adds nothing to the relevant factual issue: whether BOA acquired the loan after May 2009.   Because appellant fails to show that it did, we affirm the district court's grant of summary judgment on this claim.

*D. Summary Judgment on TCPA Claims*

Last, Humphreys objects to the dismissal of his TCPA claims on several grounds.   First, he argues that he preserved the new TCPA allegations "under the general umbrella of servicing violations . . . raised in [the] original and Amended Complaint."   He next contends that "servicing violations related to [his] request for a HAMP loan modification violated the TCPA."   Third, he presses that he "deserved fair treatment" under a settlement entered into between Countrywide and Tennessee.   None of these arguments warrants reversal.

First, we agree with the district court that the new TCPA claims—pertaining to BOA's alleged concealment of the loan's owner, its failure to seek modification approval, and misrepresentations regarding its authority to undertake a loan modification—appear nowhere in

the pleadings.   (R. 49, MSJ Op. at 22.)   Absent amended pleadings and developed argument, we adopt the portion of the district court's judgment dismissing these claims.

We do likewise with the undeveloped HAMP theory, which the district court rejected because plaintiff failed to identify specific HAMP violations.   (*Id.* at 25.) Humphreys's appellate briefing clarifies nothing, resting on the conclusory assertion that "[t]he Defendant engaged in numerous acts and omissions that violate the spirit, intent, and guidelines of HAMP."   (Appellant Br. at 22.)   The district court properly granted summary judgment on this barebones claim.

Finally, we affirm the district court's denial of relief under the Countrywide settlement, because appellant fails to show that he qualified under the terms of the settlement.   As the district court explained—and appellant does not dispute—the settlement limited modification eligibility for Pay Option ARMs to "Delinquent Borrowers," defined in relevant part as borrowers "subject to an imminent reset or Recast" of their loans.   (*See* R. 45-7, Agreed Final Judgment §§ 1.2 ("Delinquent Borrower"), 4.2(b) (modification eligibility requirements for Pay Option ARMs).) Under the terms of Humphreys's loan, a balance of 115% of the original principal, or $920,000, triggered recasting to fully amortized payments.   (R. 40-3, Adjustable Rate Note § 3(F).)   We agree with the district court that "there is no evidence that Plaintiff's principal ever approached 115% of the original balance," and thus "Plaintiff has not proven that he was entitled to loan modification based on the imminent happening of a negative amortization trigger."   (R. 49, MSJ Op. at 29.)[7]

---

[7]Humphreys's TCPA argument concludes with a brief objection to the district court's finding that he failed to show damages resulting from his increased monthly payments.   In light of

IV.

For the above reasons, we REVERSE the district court's dismissal of the fraudulent inducement claim and any overlapping portion of the intentional misrepresentation claim, but otherwise AFFIRM its judgment. We remand for further proceedings consistent with this opinion.

---

his failure to develop this argument or respond to the district court's thorough explanation of the calculation of his monthly payments (*see* R. 49, MSJ Op. at 34–37), we deem the issue forfeited. *See Benge v. Johnson*, 474 F.3d 236, 245 (6th Cir. 2007) (citation omitted) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")