IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 4, 2018 Session

## ROBERT EUGENE HULAN ET AL. v. COFFEE COUNTY BANK

**Appeal from the Circuit Court for Coffee County**
**No. 41665     Vanessa Jackson, Judge**

_____

### No. M2018-00358-COA-R3-CV

_____

A bank extended a line of credit to a husband and wife in 2007 and obtained as security a parcel of undeveloped property. The bank foreclosed on the property in 2009 upon the couple's default on the loan and filed suit in 2010 to collect a deficiency judgment. The trial court's award of a deficiency judgment was reversed on appeal. The husband and wife then filed a complaint against the bank in 2014, based on the same line of credit agreement, claiming the bank had engaged in fraud and breach of contract. The trial court granted the bank's motion for summary judgment and dismissed the 2014 complaint, and the couple appealed. We affirm the trial court's judgment, finding (1) the couple waived their breach of contract claim by failing to assert it as a compulsory counterclaim in the 2010 litigation and (2) the couple's fraud claims are barred by the statute of limitations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Anne Maddux Frazier and Thomas Anderton Wiseman, III, Nashville, Tennessee, for the appellants, Robert Eugene Hulan and Sherry Renee Hulan.

Lynda Motes Hill, Nashville, Tennessee, and Shawn Carter Trail, Manchester, Tennessee, for the appellee, Coffee County Bank.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Robert Eugene Hulan and Sherry Renee Hulan entered into a revolving line of credit agreement with Coffee County Bank ("the Bank") on August 29, 2007. The

Hulans owned two parcels of land in Morrison, Tennessee, at that time: a developed 5.13-acre lot located at 307 Clayton Lane and a nearby undeveloped 11.29-acre lot located on Chris Lee Lane. The Hulans resided in a house on the Clayton Lane property and secured the line of credit with their land located on Chris Lee Lane. The parcel on Chris Lee Lane did not have a street address, and the Bank used the Hulans' residential address on Clayton Lane to contact them with regard to the line of credit or the property securing it.

By letters dated September 9 and October 13, 2009, the Bank informed the Hulans that their loan was in default and that their failure to cure the default would result in the Bank's foreclosure on the property securing the loan. In both letters, the Bank mistakenly identified "307 Clayton Lane" as the property subject to foreclosure rather than the 11.29-acre property located on Chris Lee Lane. On December 4, 2009, the Bank foreclosed on the property that secured the line of credit, on Chris Lee Lane, which was sold at auction for $30,000. On December 9, 2009, the Bank filed an unlawful detainer action in the Coffee County General Sessions court. Again, the Bank mistakenly identified "307 Clayton Lane" as the address that the Hulans were possessing unlawfully. Following a trial on March 17, 2010, the general sessions judge awarded the Bank possession of the property at issue.[1] There is no evidence in the record that the Hulans appealed this judgment to the circuit court.

The Bank filed a complaint against the Hulans in July 2010 to recover the balance owed on the line of credit. The trial court awarded the Bank a deficiency judgment in the amount of $4,448.18, which the Hulans appealed. We reversed the judgment on appeal because the Bank relied on two different versions of a credit agreement and was unable to prove the existence of an enforceable contract with definite terms. *See Coffee Cnty. Bank v. Hulan*, No. M2012-00109-COA-R3-CV, 2013 WL 395981 (Tenn. Ct. App. Jan. 30, 2013).

On November 10, 2014, the Hulans filed a complaint against the Bank based on the 2007 line of credit agreement that was the subject of the Bank's 2010 complaint against the Hulans. In their complaint, the Hulans asserted a breach of contract cause of action, claiming that the Bank "materially and fraudulently alter[ed] the [line of credit] contract" and then wrongfully foreclosed on their property on Chris Lee Lane that secured the line of credit. The Bank moved for a more definite statement, and the Hulans filed an amended complaint on May 29, 2015. The causes of action identified in the amended complaint include wrongful foreclosure, breach of contract, and fraud, all stemming from the line of credit agreement dated August 29, 2007.

---

[1]According to the Bank, the general sessions judge was informed at trial that the property at issue was located on Chris Lee Lane, not 307 Clayton Lane. The Hulans do not dispute this, and the record does not reflect that the Hulans were dispossessed of their residence at 307 Clayton Lane as a result of this judgment. The Bank included the following in its answer to the amended complaint in this case: "The Bank did not seek to possess 307 Clayton Lane and never foreclosed on that property."

The Bank filed a motion for summary judgment on May 8, 2017. The Bank's primary arguments were that (1) the Hulans' wrongful foreclosure and fraud claims were barred by the three-year statute of limitations and (2) the Hulans were required to assert any breach of contract claim they had related to the 2007 line of credit agreement as a compulsory counterclaim in the action the Bank initiated in 2010. By failing to assert a counterclaim in the earlier action, the Bank contends, the Hulans waived their right to assert the breach of contract claim in the current litigation. The Bank also argued that the trial court lacked subject matter jurisdiction over the breach of contract claim to the extent it was based on the misidentification of the Hulans' residential property on the detainer warrant because the Hulans failed to appeal the general sessions order and that the breach of contract action was barred by the doctrines of equitable and collateral estoppel.

The trial court held a hearing on the Bank's motion on November 13, 2017, and it entered an order on February 1, 2018, granting the Bank summary judgment on all issues and dismissing the Hulans' amended complaint. The trial court found the Hulans "were well aware of the alleged wrongful and fraudulent actions of the Defendant more than three years prior to the filing of the original Complaint in this case on November 10, 2014," and that the statute of limitations had, therefore, run on these claims. With respect to the Hulans' breach of contract claim, the trial court concluded that it should have been asserted as a compulsory counterclaim to the Bank's 2010 action seeking a deficiency judgment. The trial court wrote:

> [T]he undisputed facts establish that on July 20, 2010, Coffee County Bank filed a Complaint against Plaintiffs seeking a judgment for the amount owing the Bank pursuant to [the] Line of Credit contract (*after application of the proceeds from the foreclosure sale*). Plaintiffs did not file a counterclaim seeking damages against the Bank alleging breach of the Line of Credit contract. Tenn. R. Civ. P. 13.01 provides that a pleading shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. The transaction or occurrence that was the subject matter of the Bank's claim was the Hulans' default or breach of the Line of Credit contract. In the present case, Plaintiffs' claim that [the] Bank breached the Line of Credit contract arises out of the same transaction that was the subject matter of the Bank's suit to collect the deficiency judgment. . . . Robert Hulan's deposition testimony establishes that, at the time Coffee County Bank brought suit to collect the deficiency judgment, Plaintiffs were contesting the validity and enforceability of the Line of Credit agreement. Plaintiffs' failure to file a compulsory counterclaim bars them from raising their breach of contract claim in this suit.

The Hulans appeal the trial court's judgment dismissing their amended complaint. They argue that (1) the trial court erred in granting the Bank summary judgment on their fraud and breach of contract claims and (2) the trial court's order failed to state sufficiently the facts and legal grounds upon which it relied in granting the Bank's motion for summary judgment as required by Tenn. R. Civ. P. 56.04. The Bank raises the following additional issues on appeal: (1) whether the trial court lacked subject matter jurisdiction to consider the Hulans' breach of contract and fraud claims to the extent they related to the Bank's misidentification of the property described on the detainer warrant filed in general sessions court; and (2) whether the Hulans were estopped by the doctrines of equitable and collateral estoppel from asserting a breach of contract claim.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04; *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 261-62 (Tenn. 2015) (quoting TENN. R. CIV. P. 56.04). If the party moving for summary judgment does not bear the burden of proof at trial, as here, the movant will be entitled to succeed on the motion if he or she "affirmatively negat[es] an essential element of the nonmoving party's claim or . . . demonstrate[s] that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264; *see also* Tenn. Code Ann. § 20-16-101.

A court ruling on a motion for summary judgment is required to take the "strongest legitimate view of the evidence" in favor of the non-moving party "and discard all countervailing evidence." *Davis v. McGuigan*, 325 S.W.3d 149, 157 (Tenn. 2010) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). A genuine issue of material fact exists "if the undisputed facts and inferences drawn in the [non-movant's] favor permit a reasonable person to reach more than one conclusion." *Id*. "'Then, if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied.'" *Johnson v. City Roofing Co*., No. W2003-01852-COA-R3-CV, 2004 WL 1908794, at *2 (Tenn. Ct. App. Aug. 25, 2004) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn.1993)); *see also Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn. Ct. App. 1990).

A trial court's award of summary judgment is not entitled to a presumption of correctness on appeal. *Biancheri v. Johnson*, Nos. M2008-00599-COA-R3-CV, M2007-02861-COA-R3-CV, 2009 WL 723540, at *5 (Tenn. Ct. App. Mar. 18, 2009) (citing

*BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003)). Appellate courts review a trial court's decision on a motion for summary judgment de novo. *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

B.  Fraud Claims

The Hulans assert in their amended complaint that the Bank "fraudulently initiated foreclosure proceedings against Robert and Sherry Hulan and their property at 307 Clayton Lane, Morrison Tennessee" and that the Bank "wrongly and fraudulently altered the Revolving Line of Credit Agreement, and, upon information and belief, is unable to present an original of the Revolving Line of Credit Agreement." Both of these causes of action sound in fraud and are subject to the statute of limitations for fraud claims.

The statute of limitations for fraud claims in Tennessee is three years. *See* Tenn. Code Ann. § 28-3-105(1); *Vance v. Schulder*, 547 S.W.2d 927, 931-33 (Tenn. 1977); *Am. Fid. Fire Ins. Co.*, 671 S.W.2d 837, 841 (Tenn. Ct. App. 1983); *see also Findley v. Hubbard*, No. M2017-01850-COA-R3-CV, 2018 WL 3217717, at *8 (Tenn. Ct. App. July 2, 2018) (citing *Fortune v. Unum Life Ins. Co. of Am.*, 360 S.W.3d 390, 401 (Tenn. Ct. App. 2010)); *Prism Partners, L.P. v. Figlio*, No. 01A01-9703-CV-00103, 1997 WL 691528, at *4 (Tenn. Ct. App. Nov. 7, 1997). Under the discovery rule, "a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of 'facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct.'" *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (quoting *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995)).

The Hulans were aware that the Bank erroneously identified 307 Clayton Road as the property that was subject to foreclosure in 2009, when they received letters from the Bank dated October 9 and October 13, 2009. In these letters, the Bank notified the Hulans that their note was in default and threatened to initiate foreclosure proceedings against their property located at 307 Clayton Road. The Hulans were required to file their wrongful foreclosure action against the Bank no later than October 14, 2012, to comply with the three-year statute of limitations applicable to their claim for wrongful foreclosure. Because they did not file their complaint until November 10, 2014, they waived their right to pursue this claim against the Bank.

With respect to their claim that the Bank fraudulently altered their line of credit agreement, the Hulans rely on three different photocopies of the agreement that they claim prove the Bank's fraudulent acts. The Hulans attached these photocopies to their amended complaint as Exhibits A-C. The Hulans allege that the Bank filed Exhibit A with the General Sessions Court of Coffee County on March 17, 2010, that the Bank filed Exhibit B with the Chancery Court of Coffee County on April 20, 2011, and that the

Bank filed Exhibit C with the same chancery court on June 14, 2011. More than three years passed from the latest of these dates before the Hulans filed their complaint against the Bank on November 10, 2014. The Hulans knew, or should have known, no later than June 14, 2011, of the facts supporting their claim that the Bank fraudulently altered their line of credit agreement, and they were required by the statute of limitations to file any claim they had no later than June 15, 2014, to preserve their rights. Because they did not initiate this action until November 10, 2014, they are barred by the three-year statute of limitations from pursuing this fraud claim against the Bank.[2]

The Hulans' argument that "the Bank has displayed a pattern of fraud that continues into the current litigation at hand" to justify tolling the statute of limitations is incorrect and is not well-taken. To support this argument, the Hulans rely on deposition testimony by Kenneth Kirby, an officer of the Bank. On May 27, 2016, Mr. Kirby testified at his deposition as follows:

Q: Is your testimony today that this document entitled "Revolving Line of Credit Agreement," which is attached to your affidavit and is Exhibit 1 to your deposition, is a copy of the actual original note that was executed by Robert Hulan?

A: I would say yes.

It is evident from this excerpt that the Hulans' attorney was questioning Mr. Kirby about the 2007 line of credit agreement, and Mr. Kirby responded that he believed the document was a copy of the original note. Despite the fact that we reversed the trial court's award of a deficiency judgment to the Bank in 2013, the basis of our decision in that case was that the Bank relied on two inconsistent versions of the line of credit agreement, not that the Bank had engaged in fraudulent activity. *See Coffee Cnty. Bank*, 2013 WL 395981, at *4. Thus, Mr. Kirby's testimony that the document he was shown during his deposition was a copy of the original agreement is not inconsistent with our earlier holding against the Bank and is not evidence of any "continuing fraud."

The Hulans also rely on the following deposition testimony by Mr. Kirby for their continuing fraud theory:

Q: Do you agree that Coffee County Bank wrongfully started foreclosure proceedings on the Clayton Road property of Mr. Hulan?

---

[2]We also note evidence in the record showing that Mr. Hulan was aware of the facts underlying this claim on June 3, 2011, when he was giving a deposition and described the line of credit agreement as "a fraudulent document" and "a piece of fraud."

A: No.

The Hulans' attorney was questioning Mr. Kirby here about the Bank's foreclosure on the Chris Lee Lane property back in 2009. As discussed above, the Bank has acknowledged that it misidentified the Clayton Road property as the property that secured the Hulans' line of credit in their letters to the Hulans dated September 9 and October 13, 2009, and in the detainer warrant they filed with the general sessions court. However, it is undisputed that the Bank properly foreclosed on the Chris Lee Lane property and did not dispossess the Hulans from their residence on Clayton Road.

Contrary to the Hulans' argument, neither Mr. Kirby's testimony that the document he was shown at his deposition was a copy of the original nor his testimony that the Bank did not initiate foreclosure proceedings on the Clayton Road property "display[s] a pattern of fraud" that justifies tolling the three-year statute of limitations. The Hulans point to no independent actions by the Bank to support their continuing fraud theory, and we reject their argument that the Bank's responses to questions posed by the Hulans' attorney constitutes fraud.

C. Breach of Contract Claim

The Hulans' breach of contract claim is based on the same line of credit agreement that was at issue in the Bank's 2010 action. Tennessee Rule of Civil Procedure 13.01 addresses compulsory counterclaims, and it provides, in pertinent part:

> A pleading shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that a claim need not be stated as a counterclaim if at the time the action was commenced the claim was the subject of another pending action.

As the Tennessee Supreme Court has explained, the purpose of compulsory counterclaims is "to insure that only one judicial proceeding [is] required to settle all those matters determinable by the same facts or law, that is, to bring all logically related claims into a single litigation, thereby avoiding multiplicity of suits." *Quelette v. Whittemore*, 627 S.W.2d 681, 682 (Tenn. Ct. App. 1981) (quoting 20 AM. JUR. 2D *Counterclaim* § 15 (1965)). This Court has written that "if a party fails to file a counterclaim, other than those excluded by the Rule itself, in response to a pleading in accordance with Rule 13.01 and the controversy results in a final judgment, then that party would be precluded from filing suit on that claim." *Crain v. CRST Van Expedited, Inc.*, 360 S.W.3d 374, 379 (Tenn. Ct. App. 2011). This rule "promotes the efficient and

expeditious determination of all issues in a single proceeding and discourages needless litigation." *Lowe v. First City Bank of Rutherford Cnty.*, No. 01-A-01-9305-CV00205, 1994 WL 570082, at *3 (Tenn. Ct. App. Oct. 19, 1994) (citing *Clements v. Austin*, 673 S.W.2d 867, 869 (Tenn. Ct. App. 1983); *Quelette*, 627 S.W.2d at 682); *see also Walker v. Duracell U.S.A.*, 717 S.W.2d 579, 580 (Tenn. 1986); *Philadelphia Indem. Ins. Co. v. Lacey*, No. 3:18-cv-38, 2018 WL 3999821, at *3 (E.D. Tenn. Aug. 21, 2018).

The Hulans argue on appeal that they should not have to comply with Rule 13.01 for the following reasons:

> In rendering its decision, this Court only considered whether the Bank presented an enforceable contract for the limited purpose to enforce a deficiency judgment and attorney's fees based on two versions of the RLOC [revolving line of credit] Agreement presented before the trial court. This Court did not consider the version of the RLOC Agreement attested to as valid and correct by Bank President, Kenneth Kirby, on April 19, 2011, nor did this Court consider the Detainer Summons and Coffee County Bank's representation to the General Sessions Court that the Clayton Lane property secured the RLOC. Additionally, this Court did not consider the court order, signed by Judge Ledsinger, evicting the Hulans from their home property at 307 Clayton Lane.

(Citations omitted.) With all due respect, this Court addressed all issues the parties properly presented for review on appeal. If the Hulans believed that we did not address an issue that was properly raised on appeal, their recourse was to file a petition for rehearing in accordance with Rule 39 of the Tennessee Rules of Appellate Procedure, not to file a new case and then assert as a reason for not complying with Tenn. R. Civ. P. 13.01 that this Court failed to address one or more issues in an earlier case.

Despite the Hulans' attempt to show that their breach of contract claim "stem[s] from a different occurrence" or "embodies a different cause of action, different issues of fact, and requires different proof than the Bank's 2010 Complaint," the fact remains that the contract at issue in the Bank's 2010 action and in the Hulans' 2014 action is the same. The theories of liability, of course, are different, but the contract is the same. Thus, the Hulans were required by Tenn. R. Civ. P. 13.01 to assert a counterclaim in the 2010 litigation initiated by the Bank to pursue their breach of contract claim. We reject the Hulans' request that we excuse them from complying with Rule 13.01 to "protect them from injustice." The Hulans had a full and fair opportunity to defend the Bank's claim against them in 2010 and nothing prevented them from asserting a counterclaim against the Bank as part of that litigation.

D.  Tenn. R. Civ. P. 56.04

The Hulans' final argument is that the trial court failed to comply with Tenn. R. Civ. P. 56.04, which requires a trial court ruling on a motion for summary judgment to "state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling."  Contrary to the Hulans' contention, the trial court did, in fact, specify the legal grounds upon which it relied in granting the Bank's motion for summary judgment.  As described in more detail above, the trial court concluded that the Hulans' fraud claims were barred by the applicable three-year statute of limitations and that their breach of contract claim was barred by the Hulans' failure to assert a compulsory counterclaim in the 2010 litigation as required by Tenn. R. Civ. P. 13.01.  This case is not like *Church v. Perales*, 39 S.W.3d 149, 157 (Tenn. Ct. App. 2000), where the trial court failed to explain the basis for its decision to grant the defendants' motions for summary judgment.  *See also Range v. Baese*, No. M2006-00120-COA-R3-CV, 2008 WL 186645, at *2-3 (Tenn. Ct. App. Jan. 22, 2008) (remanding case where trial court failed to state the legal basis for its decision granting motion for summary judgment).  Despite the Hulans' argument to the contrary, Rule 56.04 does not require the trial court to address each argument the parties made in rendering its decision.

E.  Subject Matter Jurisdiction

The Bank argues that the trial court lacked subject matter jurisdiction to hear the Hulans' breach of contract claim and fraud claims to the extent they were based on the Bank's misidentification of the property listed on the general sessions detainer warrant.  The Bank contends, and the Hulans do not dispute, that the Hulans did not appeal the general sessions judgment awarding the Bank possession of the Hulans' property that was identified on the detainer warrant as 307 Clayton Road.  Although the Hulans allude to the Bank's misidentification in the general sessions court of the property that secured the line of credit and that the Bank was entitled to possess, we do not believe the Hulans were asking the trial court to rehear that case.  The Bank fails to cite any authority that suggests a court is without subject matter jurisdiction to consider a party's representation made in a different case, and we are aware of no such authority.  Thus, the Bank cannot prevail on this argument.

In light of our affirmance of the trial court's decision awarding the Bank summary judgment on all issues, we need not address the other issues the Bank raises on appeal and find they are pretermitted.

III. CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants, Robert Eugene Hulan and Sherry Renee Hulan, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE